MARGARET B. SPARROW, JOHN C. VEDDER, AND EDWARD GRANT SPARROW, AS TRUSTEES UNDER THE WILL OF EDWARD W. SPARROW, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARGARET B. SPARROW, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD GRANT SPARROW, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARGARET B. SPARROW AND BANK OF NEW YORK & TRUST CO. (NAME LATER CHANGED TO NEW YORK LIFE INSURANCE & TRUST CO.), AS GENERAL GUARDIANS OF MARGARET ALICIA SPARROW, AN INFANT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 19357–19360.   Promulgated November 9, 1929.

*Heber Smith, Esq.*, and *W. D. H. Stanley, Esq.*, for the petitioners. *E. C. Lake, Esq.*, for the respondent.

4

8

## OPINION.

SMITH: The principle question presented by these proceedings is whether the income of the residuary estate of Edward W. Sparrow, deceased, for the years 1917 to 1920, inclusive, accumulated by the trustees for future distribution in accordance with the terms of the will, should be taxed to the estate as an entity or taxed as the income of three trust estates. Throughout the period the trustees held the estate intact and made a single return each year of such accumulated income and paid the tax shown to be due by such returns.

Section 16 of the Personal Property Law of the State of New York (Laws of 1909, ch. 45) in so far as it is material in the present discussion is as follows:

Validity of directions for accumulation of income. An accumulation of the income of personal property, directed by any instrument sufficient in law to pass such property is valid:

1. If directed to commence from the date of the instrument, or the death of the person executing the same, and to be made for the benefit of one or

more minors, then in being, or in being at such death, and to terminate at or before the expiration of their minority.

2. If directed to commence at any period subsequent to the date of the instrument or subsequent to the death of the person executing it, and directed to commence within the time allowed for the suspension of the absolute ownership of personal property, and at some time during the minority of the persons for whose benefit it is intended, and to terminate at or before the expiration of their minority.

3. All other directions for the accumulation of the income of personal property, not authorized by statute, are void. In either case mentioned in subdivisions one and two of this section a direction for any such accumulation for a longer term than the minority of the persons intended to be benefited thereby, has the same effect as if limited to the minority of such persons, and is void as respects the time beyond such minority.

The provisions of the will of Edward W. Sparrow for the accumulation of the income beyond the date when Edward Grant Sparrow attained his majority (April 9, 1920) were contrary to the laws of the State of New York, and shortly after Edward Grant Sparrow attained his majority he instituted a suit in the Supreme Court of the State of New York against the executors and others interested under the will in a case entitled "Edward Grant Sparrow v. John M. Longyear et al.," praying for judgment that the directions for accumulations contained in the will of his father after he had reached his majority were invalid and in conflict with the laws of the State of New York. An interlocutory decree was entered in said action on or about June 18, 1921, wherein it was held that the directions for accumulations of income after the majority of Edward Grant Sparrow were invalid and wherein it was directed that the trustees pay to Edward Grant Sparrow three-fifths and to Margaret Alicia Sparrow two-fifths of all accumulations theretofore made by the trustees. The final judgment in this action was entered on or about November 17, 1922, and incorporated the terms and provisions of the interlocutory judgment.

It is the petitioners' contention that this final judgment of the Supreme Court of the State of New York must be construed in the light of the law of that State, and that so construed it holds that the will of Edward W. Sparrow created three trusts as follows:

FIRST. A trust for the benefit of the petitioner, Margaret B. Sparrow, the testator's widow of so much of the residuary estate as is necessary to pay to her the sum of $50,000.00 per annum, together with certain other sums specified in subdivision "(b)" of the "Twelfth" paragraph of said will;

SECOND. A trust to accumulate the income of 3/5ths of the balance of said residuary estate, for the benefit of the petitioner, Edward G. Sparrow, the testator's son until his majority and thereafter to pay such income to him annually;

THIRD. A trust to accumulate the income of 2/5ths of the balance of the testator's residuary estate for the benefit of testator's daughter, Margaret

Alicia Sparrow until Edward G. Sparrow should attain his majority and there-
after to pay such income to her annually.

A careful study of the provisions of the will of Edward W. Spar-
row does not evince an intention on the part of the testator to create
three trust funds with respect to his residuary estate. The testator
did create certain trust funds for the benefit of relatives, but they
had nothing whatever to do with the residuary estate. It was the
apparent intent of the testator that his residuary estate should be
kept intact by the trustees for a long period of years and that part
of the income be paid to his widow annually and the balance be
accumulated for the benefit of his children until the son, Edward
Grant Sparrow, should reach the age of 30 years. The will pro-
vided that the income thus accumulated should be added to the
corpus during the period of accumulation. The trustees acting
under the will during all of the years 1917 to 1920, inclusive, kept
accounts of the residuary estate as an entity and made no distribu-
tion to the son and daughter of the decedent and did not set apart
on the books of account the income which accrued to their benefit.
It was not until after Edward Grant Sparrow reached the age of
21 years that there was any segregation of the accounts of the estate
for the purpose of showing income accruing for his benefit.

In the litigation instituted by Edward Grant Sparrow against
the executors and others there was no contention that the will was
invalid so far as it related to accumulations of income up to the
date when the son attained his majority, which was April 9, 1920.
The validity of the will relating to such accumulations was not in
question. The petitioner simply prayed for a judgment that the
directions for accumulations contained in the will of his father on
and after the son reached his majority were invalid and in conflict
with the laws of the State of New York. The court granted such
prayer. There is no statement in the interlocutory decree or the
final judgment of the court that the proper construction of the will
of Edward W. Sparrow is that three trusts were created with respect
to the residuary estate from the date of the death of the decedent
or from the date when the executors turned the residuary estate
over to the trustees to be administered by them. The court refers
in many places to the income of the residuary estate as being the
income of "said trust estate." In the fifteenth paragraph of the
final judgment of the court, mention is made of the "trustees for the
several trusts" and mentions them as—

Trust for Margaret B. Sparrow and others.
Trust for Alicia J. Lansing.
Trust for Mary H. S. Orloff.

The "Trust for Margaret B. Sparrow and others" refers to the trust composed of the "residuary estate." The contention of the petitioners that the will of Edward W. Sparrow created three trust estates with respect to his residuary estate is not sustained.

The petitioners do not contend that the Supreme Court of New York County expressly found that the testator's will created three trusts. They do contend, however, that the direction of that court to the trustees to distribute income in accordance with the instructions of the testator (as modified by the order of the court), was predicated upon a finding that the will created separate valid trusts. It is contended that the trusts involved in the case at bar were subject to regulation under the laws of the State of New York, which limit the period during which a single trust may exist to two lives in being at the date of the creation of the trust, *Herzog* v. *Title Guarantee & Trust Co.* (1903), 177 N. Y. 86; 69 N. E. 283, and forbids accumulations beyond the minority of the beneficiary. Petitioners further contend that the will of the testator is to be construed according to the laws of New York and that, further, this Board must determine either (1) that the trusts for the benefit of Margaret B. Sparrow, Margaret Alicia Sparrow, and Edward Grant Sparrow have been since their creation separate and distinct trusts, or (2) that the disposition of his estate contemplated by the testator was in violation of the law of New York; that in the latter case the residuary estate of the testator is disposed of by article "Fourteenth" of his will and that Edward Grant Sparrow became entitled to three-fifths thereof and the income therefrom and Margaret Alicia Sparrow to two-fifths thereof and the income therefrom; that in either case the *income* is divided in the same way.

We do not think it necessary to consider the statutes of the State of New York as they have been construed by the courts of that State with respect to the limitation of the period during which a single trust may exist to two lives in being at the date of the creation of the trust. In the case of *Sparrow* v. *Longyear* the Supreme Court of New York County was not asked to decide, and did not decide, that the provisions of the will of Edward W. Sparrow with respect to the accumulations of income during the minority of Edward Grant Sparrow were invalid. We can not presume that the New York court would have held, had it been asked to do so, that the will of Edward W. Sparrow created three trust estates out of his "residuary estate." The court simply directed that the accumulations made by the trustees up to April 9, 1920, be distributed forthwith to the beneficiaries entitled to the same and directed that proper

accounting be had for the purpose of determining the amount of the income to be distributed.

The reason for the New York rule that several trusts are created where one would be void is not here present and the rule does not apply. As was stated in *Anna M. Harkness*, 1 B. T. A. 127, " It seems to us to be fundamentally unsound to determine income tax liability by what might have taken place rather than by what actually occurred."

The pertinent provisions of the Revenue Acts of 1916 and 1918 applicable to the point in issue are as follows:

Revenue Act of 1916, section 2 (b):

Income received by estates of deceased persons during the period of administration or settlement of the estate, shall be subject to the normal and additional tax and taxed to their estates, and also such income of estates or any kind of property held in trust, including such income accumulated in trust for the benefit of unborn or unascertained persons, or persons with contingent interests, and income held for future distribution under the terms of the will or trust shall be likewise taxed, the tax in each instance, except when the income is returned for the purpose of the tax by the beneficiary, to be assessed to the executor, administrator, or trustee, as the case may be: *Provided*, That where the income is to be distributed annually or regularly between existing heirs or legatees, or beneficiaries the rate of tax and method of computing the same shall be based in each case upon the amount of the individual share to be distributed.

Revenue Act of 1918, section 219:

(a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust including—

(1) Income received by estates of deceased persons during the period of administration or settlement of the estate;

(2) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests;

(3) Income held for future distribution under the terms of the will or trust; and

(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct.

(b) The fiduciary shall be responsible for making the return of income for the estate or trust for which he acts. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, * * *

(c) In cases under paragraph (1), (2), or (3) of subdivision (a) the tax shall be imposed upon the net income of the estate or trust and shall be paid by the fiduciary, except that in determining the net income of the estate of any deceased person during the period of administration or settlement there may be deducted the amount of any income properly paid or credited to any legatee, heir or other beneficiary. In such cases the estate or trust shall, for the purpose of the normal tax, be allowed the same credits as are allowed to single persons under section 216.

(d) In cases under paragraph (4) of subdivision (a), and in the case of any income of an estate during the period of administration or settlement permitted by subdivision (c) to be deducted from the net income upon which tax is to be paid by the fiduciary, the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary his distributive share, whether distributed or not, of the net income of the estate or trust for the taxable year, or, if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the net income of the estate or trust is computed, then his distributive share of the net income of the estate or trust for any accounting period of such estate or trust ending within the fiscal or calendar year upon the basis of which such beneficiary's net income is computed. In such cases the beneficiary shall, for the purpose of the normal tax, be allowed as credits in addition to the credits allowed to him under section 216, his proportionate share of such amounts specified in subdivisions (a) and (b) of section 216 as are received by the estate or trust.

The normal application of the provisions of the statutes above quoted is that the income collected by the trustees under the will of Edward W. Sparrow, deceased, should be taxed to the estate as an entity upon the ground that it is income held for future distribution under the terms of the will or trust. The trustees so returned the income and paid a tax thereon. The son and daughter of the testator, the principal beneficiaries of the trust fund, did not receive the income accumulated for them during the years 1917 to 1920, inclusive, and the income was not distributed to them until after April 8, 1920.

In support of their contention that the proper application of the taxing statute reaches the result contended for by them, the petitioners cite the case of *Willcuts* v. *Ordway* (1927), 19 Fed. (2d) 917, in which the Circuit Court of Appeals for the Eighth Circuit, in construing the provisions of the Revenue Acts of 1916 and 1918, said:

* * * In each of these acts, the intent is that annual income to a particular beneficiary from a trust estate shall be taxed to him as a separate unit of taxation where that income is " distributed " to him. " Distribution," as there used, does not necessarily mean passing into the uncontrolled possession and disposition of the beneficiary. It means separation and segregation from the trust estate so that it no longer forms any part or parcel thereof. The test set up by the statute is whether the income passes from the trust estate which produced it and ceases to be subject to the terms and control of *that trust*. If this trust instrument authorized such incomes to be so separated and segregated and they were so treated in fact, the Commissioner was in error and the trial court properly overruled the demurrer to this petition and entered judgment for the refund. (Italics ours.)

Petitioners submit that this case is determinative of the issues involved in these proceedings; that the Circuit Court of Appeals held that income of a trust payable to several beneficiaries, although not presently delivered by trustees to the beneficiaries, is, neverthe-

less, separately taxable if the right to that income is fixed during the taxable year; that the postponement of payment is not decisive; that it is the legal right of the beneficiaries to the income which determines whether the tax is to be assessed against one or more taxable units. In our opinion the cited case is not controlling. In that case the point before the court was whether the income should be taxed to the fiduciary or to the beneficiaries. A trust had been established. Some of the beneficiaries under the trust were adults and some were minors. In accordance with the terms of the will, their portion of the income was actually distributed to the adults; a portion of the minors' income, because they were minors, was not handed over to them, but was by the trustees invested in securities which were segregated from the corpus of the trust fund and held in a separate repository until the minors attained their majority, at which time those securities were delivered to them. The court held in that case that there was a *distribution;* that the purchase and segregation of the securities for the benefit of the minors was on a par with the actual distribution to the adults. In the proceedings at bar there was *no distribution* to any one until the son attained his majority nor was there in this case a segregation of income of the alleged separate trusts. With respect to the accumulated income the son or the daughter of the decedent did not have a right to receive the income prior to the date when Edward Grant Sparrow attained his majority.

From a consideration of the entire record we are of the opinion that the respondent was correct in holding that the income accumulated for the son and daughter of the testator for the years 1917, 1918, and 1919 was taxable to the trustees as income accumulated upon a single entity.

On and after April 9, 1920, the accumulated income of the trust estate became distributable to the beneficiaries entitled to receive it. This related not only to the income accumulated during the years 1917, 1918, and 1919, but also to that which accrued from January 1 to April 8, 1920, inclusive. In a case involving facts identical with those under consideration, *Jacob F. Brown, Trustees, et al.,* 9 B. T. A. 521, this Board held that the entire annual income of a trust which terminated during the taxable year was taxable to the beneficiaries and not to the trustee. That case is controlling in these proceedings. The trust estate is not liable to income tax in respect of the income of the year 1920 which was distributable to the beneficiaries during that year. Cf. *Grace Scripps Clark et al.,* 1 B. T. A. 491; *Crocker* v. *Nichols,* 27 Fed. (2d) 598.

Article " Thirteenth " of the will of Edward W. Sparrow provides that his widow shall have the right to occupy any residence

which the testator might own in the City of New York at the time of his death. At the time of his death he owned the premises at 41 East 68th St., since which time his widow has resided therein. During the years 1917 to 1924, inclusive, the trustees made certain repairs upon the premises, which upon the death of the widow will become a part of the residuary estate. They paid over to the widow in accordance with the "Twelfth" paragraph of the will annually a sum equal to the amount of the annual taxes, water rates, assessments and insurance charges upon the residence. The amounts spent by the trustees for repairs upon the estate are shown in our findings. These amounts were claimed as deductions from gross income of the estate for the purpose of determining the net income of the estate for the years 1917, 1918, and 1919, and for the purpose of determining the distributable income of the beneficiaries for the years subsequent to 1919. The respondent has disallowed these deductions, upon the ground that Margaret B. Sparrow had a life estate in the property and that she was properly chargeable with the cost of repairs to the property.

We are of the opinion that Margaret B. Sparrow did not have a life estate in the premises. The will specifically provides that she "shall have the right to occupy such residence, * * * without the payment of any rent or charge therefor." This would imply that she could not lease the premises and that she would not be entitled to receive rents or profits from the premises should they be leased by the trustees. All such rents and profits would be payable to the trustees. Her only right in the premises is to occupy them. Nowhere does it appear in the will that the testator intended his widow to assume the obligations of a life tenant. She was not required to prevent waste, keep down encumbrances and charges, to pay interest on mortgages, if any such rested on the property, or to contribute toward paying off mortgages. Since the premises in question were a part of the corpus of the trust estate, the trustees clearly had authority to make necessary repairs upon them. Clearly, if the trustees had rented the premises and derived rent therefrom, no question could be raised but that they would be entitled to deduct from the gross income of the estate the amounts paid by them for necessary repairs. We think the situation is no different merely because by the provisions of the will the testator's widow was permitted to occupy the premises. Nor do we think that there is any necessary implication that the testator intended that his widow should bear the expense of necessary repairs. He provided that the trustees should pay over to the widow a sum "equal to the amount of the annual taxes, water rates, assessments, and insurance charges"

upon the property. Paragraph "Thirteenth" of the will provided, however, that the widow should occupy the premises "without the payment of any rent or charge therefor." As we construe the will, the widow was not chargeable with repairs upon the premises and, since the premises were included in the corpus of the trust estate, the trustees clearly had implied authority to make necessary repairs.

Although the respondent does not question the right of the Board to determine the deductibility of the amounts paid for repairs for the years 1917 to 1921, inclusive, the respondent does contend that the Board has no jurisdiction to determine the deductibility of any amounts paid by the trustees for the years subsequent to 1921, for the reason that the respondent has not determined any deficiencies to be due from the estate for years subsequent to 1921.

It is to be noted, however, that the respondent has determined deficiencies to be due from the beneficiaries of the trust estate for 1922, 1923, and 1924, and that in the determination of those deficiencies he has determined the distributable income of the estate and has disallowed the deduction of certain amounts which the petitioners claim are deductible. The effect of this is to increase the distributable income of the beneficiaries by certain amounts claimed by the petitioners to be deductible from the gross income of the estate in the determination of the distributable income. Margaret B. Sparrow, Edward Grant Sparrow, and Margaret Alicia Sparrow claim that the respondent has overstated in each case their shares of the distributable income of the estate for the years 1922, 1923, and 1924. The Board clearly has jurisdiction of those proceedings for the purpose of determining whether the respondent has erred in computing the petitioners' shares of the distributable income. Upon this point it may be noted that the deficiency notice sent to each of the beneficiaries on June 17, 1926, contains the following paragraph:

With reference to the deductions for accountants' fees, fees for the New York Life Insurance & Trust Co., and printing expenses claimed as deductions against the income of the estate of Edward W. Sparrow, you are advised that this office holds that these items were properly disallowed by the revenue agent.

The petitioners allege that the respondent has erroneously computed the distributable income for 1920 in that he has disallowed the deduction from gross income of $10,683.75 expended by the trustees for an audit of their accounts for a period commencing May 1, 1915, and ending on April 8, 1920, and also in disallowing the deduction of $2,749.34 expended by the trustees during that year for the inspection of certain lands belonging to the estate, situated in the State of Oregon.

18

Section 219 (b) of the Revenue Act of 1918 provides, so far as is here material:

* * * The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212 * * *.

Section 212 provides:

(a) That in the case of an individual the term "net income" means gross income as defined in section 213, less the deductions allowed by section 214.

Section 214 (a) provides in part:

(a) That in computing net income there shall be allowed as deductions:
(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

In *William W. Mead*, 6 B. T. A. 752, the Board considered a case similar to the proceedings at bar, so far as the deduction of expenses is concerned. In that opinion we stated:

In our opinion expenses which were necessary to be paid out over a number of years in preserving the estate, selling the property and collecting interest or deferred payments on sales, are deductible from the gross income of the estate. Such expenses come under the classification of ordinary and necessary expenses in carrying on a trade or business. Under section 219 of the Revenue Act of 1918 an estate or trust is entitled to the same deductions for such expenses as are allowed to individuals.

We have also held, in *George W. Seligman*, 10 B. T. A. 840, that expenses incurred by executors in maintaining a country estate and in procuring a lessee for the estate, as well as attorney fees incurred in maintaining the corpus of the estate, are properly deductible from taxable income.

The trustees of the estate of Edward W. Sparrow were required to account to the court for the income which had been received by the trustees of the estate from 1915 to 1922. It was necessary for them to employ accountants for this detail work. They did so and paid necessary fees for the accomplishment of the work. The respondent has allowed the deduction of certain amounts paid for accountants' fees but has disallowed the balance. In our opinion the amounts disallowed constitute ordinary and necessary expenses of the trustees and are legal deductions from the gross income of the estate.

The respondent disallowed the deduction of $2,749.34 paid by the trustees in 1920 for the inspection of certain timber lands belonging to the estate, situated in the State of Oregon, the reason for the disallowance being that in the opinion of the Commissioner the item was a capital charge and was connected with a prospective sale of the timber lands. The respondent has, however, submitted no evidence that a sale of the timber lands was contemplated in 1920 and the will of Edward W. Sparrow authorized the trustees to retain

this timber land as a part of the principal of the trusts. Upon the evidence of record the amount paid for the inspection and survey must be held to be an ordinary and necessary expense of the conduct of the estate.

On December 30, 1921, the trustees of the Sparrow estate paid to the State Tax Commission of the State of New York $76,447.88, being the amount of transfer tax due the State of New York on the estate of Edward W. Sparrow together with interest thereon for delayed payment. In their income-tax returns for 1921, the beneficiaries claimed the deduction from gross income of their proportionate shares of the transfer tax paid. In their petition to this Board the petitioners allege that the respondent—

has failed to allow as a deduction from gross income for that year [1921] the amount of New York transfer taxes paid during the year to the State Tax Commission of the State of New York, but instead, has allowed a deduction of the proportionate amount of such taxes to the individual beneficiaries named in the said Will.

In the brief filed in support of the contentions of the petitioners it is stated:

During the year 1921 the trustees of the Sparrow estate paid certain transfer bequests to the State of New York. In the returns of their income for that year the individual beneficiaries claimed these taxes as a deduction.

The Commissioner disallowed these deductions.

Under the provisions of section 703 of the Revenue Act of 1928, deductions must be allowed to the petitioners as claimed. The evidence of record is to the effect that the Commissioner has allowed the beneficiaries the deductions of their pro rata shares of the transfer tax paid. This is warranted by section 703 of the Revenue Act of 1928. There appears to be no issue before the Board upon this point.

In 1922 the trustees of the estate of Edward W. Sparrow paid $3,556.88 accountants' fees in preparing their accounts as trustees and $2,000 to the New York Life Insurance & Trust Co. for services rendered to the trustees and $2,408.48 for bringing their accounts as trustees and, in 1923, they paid $25,299.18 for counsel fees and disbursements for services rendered in connection with the suit for construction of testator's will and for an accounting brought against the trustees for the year 1920 for other legal services, all of which deductions have been disallowed by the respondent in computing the distributable income of the beneficiaries for the years 1922 and 1923. We are of the opinion that these amounts were proper deductions from the gross income of the estate in the determination of the distributable income payable to the beneficiaries. A part, at least, of these amounts was incurred in connection with the suit

bought against the estate by Edward Grant Sparrow. The trustees were ordered by the court to incur the expenses. We can not doubt that the expenses were ordinary and necessary expenses within the purview of section 214 (a) (1) of the Revenue Act of 1921. The distributable income of the estate should be reduced by the amounts in question.

The seventh allegation of error in the petition is that the respondent in his notice of deficiency to Margaret B. Sparrow, as guardian of Margaret Alicia Sparrow, has failed to give to Margaret B. Sparrow, as guardian, credit for an overassessment of $69.24 for the year 1921. The answer filed by the respondent in this case is to the effect that credit was not given by reason of the fact that more than five years elapsed from the date of payment to the date when the deficiency notice was mailed and that the credit can not be given under the statute. The petitioners have submitted no evidence to the contrary. The return in question was filed on or about March 16, 1922, and it shows on its face that the tax shown to be due by the return in the amount of $81.29 was paid on March 16, 1922. The deficiency notice from which the appeal to this Board was taken was mailed on June 17, 1926. The denial of the credit by the respondent is sustained.

The final allegation of error is that in each of the years 1917 to 1924, the Commissioner, in proportioning the net income of the estate among the several taxpayers entitled to share therein, has omitted to apportion nontaxable income, with the result that taxable income apportioned to Margaret B. Sparrow, one of the beneficiaries, has been increased in each year and the amount of her income tax for each of said years has been correspondingly increased.

It is not apparent from the voluminous evidence submitted in these cases that the error complained of was committed by the respondent. It is, however, a matter of accounting which will be adjudicated in the settlement under Rule 50.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

MURDOCK, dissenting: I dissent from a part of the prevailing opinion dealing with the last point. The opinion states in regard to this point that it is not apparent that the error complained of was committed by the respondent. I believe we should take no action in any case until it is apparent that the Commissioner has committed some error. See *Henry Wilson et al.*, 16 B. T. A. 1280.