ARTHUR C. STIFEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD W. STIFEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HENRY G. STIFEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 60738–60740.   Promulgated February 21, 1934.

*J. Robert Sherrod, Esq.*, for the petitioners.
*E. L. Corbin, Esq.*, for the respondent.

OPINION.

BLACK: Petitioners seek a redetermination of deficiencies in income tax for the calendar year 1928 in the respective amounts of $104, $466.30, and $458.71. Approximately $16,760 is in controversy, due to the contention of each petitioner that he has overpaid his tax liability for the year in question. The error assigned in each petition is identical and is as follows:

The Commissioner of Internal Revenue has erroneously included in net income distributions received by the petitioner from the J. L. Stifel & Sons Company in the amount of $42,268.21 for the year 1928, which amount was paid from capital of the corporation.

The proceedings were submitted upon the pleadings. The following summary of the facts alleged in the petitions and admitted by respondent in his answers will be sufficient for the purposes of this report.

Each petitioner is an individual, with his residence and place of business in Wheeling, West Virginia. Each petitioner filed his

income tax return for the calendar year 1928 on the following dates, showing the following tax liabilities:

| | | |
|---|---|---|
| Arthur C. Stifel, March 16, 1929 | | $20, 270. 91 |
| Edward W. Stifel, March 19, 1929 | | 24, 504. 20 |
| Henry G. Stifel, March 25, 1929 | | 17, 747. 46 |

J. L. Stifel & Sons, a corporation, was organized on June 1, 1920, and acquired the business of J. L. Stifel & Sons, a copartnership, for 12,000 shares of $100 par value preferred stock and 60,000 shares of no par value common stock. The common stock was set up on the corporation's books at $30 a share.

Each petitioner herein owns 20,000 shares of the no par common stock and 4,000 shares of the preferred stock of J. L. Stifel & Sons.

The fair market value of the assets paid in for the preferred and common stock of J. L. Stifel & Sons on June 1, 1920, was $3,326,-502.88, which was set up on the books of the corporation as follows:

| | |
|---|---|
| Preferred stock | $1, 200, 000. 00 |
| Common stock, no par value | 1, 800, 000. 00 |
| Paid-in surplus | 326, 502. 88 |
| Total | 3, 326, 502. 88 |

For the seven-month period from June 1 to December 31, 1920, and for each of the calendar years 1921 to 1928, inclusive, the operating profits and losses of J. L. Stifel & Sons were as follows:

| Year | Income | Losses | Year | Income | Losses |
|---|---|---|---|---|---|
| 1920 (7 mos.) | | $532, 026. 24 | 1925 | $149, 637. 53 | |
| 1921 | $192, 406. 60 | | 1926 | 105, 592. 64 | |
| 1922 | 335, 159. 73 | | 1927 | 179, 542. 81 | |
| 1923 | 311, 492. 92 | | 1928 | | $39, 059. 87 |
| 1924 | 125, 788. 25 | | | | |

From the date of its organization up to January 1, 1929, J. L. Stifel & Sons made the following distributions on its capital stock:

| | | | |
|---|---|---|---|
| 1922 | $104, 000 | 1926 | $180, 000 |
| 1923 | 204, 000 | 1927 | 126, 000 |
| 1924 | 180, 000 | 1928 | 180, 000 |
| 1925 | 180, 000 | | |

In his income tax return each petitioner included as dividends distributions of $60,000 received from J. L. Stifel & Sons, a corporation, in 1928.

The respondent in determining the deficiencies herein made several minor corrections in petitioners' returns, which are not disputed here, but did not change the amount of dividends each petitioner reported as set forth in the preceding schedule.

Each petitioner now contends that under section 115 (a) and (b) of the Revenue Act of 1928 only $17,731.79 of the $60,000 received is

taxable as a dividend, and that the balance, or $42,268.21, is a distribution of capital and is not taxable. The respondent contends that each petitioner is taxable on the full $60,000 received.

For the purpose of clearly illustrating the manner in which petitioners and respondent arrive at their respective results, the detailed computation of each is set forth in the following schedule:

| | Petitioners' method | Respondent's method |
|---|---|---|
| June 1, 1920, "earnings or profits accumulated" | None | $326,502.88 |
| June 1 to Dec. 31, 1920, operating loss | ($532,026.24) | (532,026.24) |
| Available for dividends | (532,026.24) | (205,523.36) |
| Years 1921 and 1922, operating profits | 527,566.33 | 527,566.33 |
| Available for dividends | (4,459.91) | 322,042.97 |
| Year 1922, dividends paid (see note below) | 104,000.00 | 104,000.00 |
| Balance available for dividends | (4,459.91) | 218,042.97 |
| Jan. 1 to Jan. 10, 1923, operating profits (9/365 times $311,492.92) | 7,680.65 | 7,680.65 |
| Available for dividends | 3,220.74 | 225,723.62 |
| Jan. 10, 1923, dividend paid (see note below) | 24,000.00 | 24,000.00 |
| Balance available for dividends | None | 201,723.62 |
| Jan. 10 to Dec. 31, 1923, operating profits | 303,812.27 | 303,812.27 |
| Available for dividends | 303,812.27 | 505,535.89 |
| Mar. 3 to Dec. 31, 1923, dividends paid | 180,000.00 | 180,000.00 |
| Balance available for dividends | 123,812.27 | 325,535.89 |
| Years 1924 and 1925, operating profits | 275,425.78 | 275,425.78 |
| Available for dividends | 399,238.05 | 600,961.67 |
| Years 1924 and 1925, dividends paid | 360,000.00 | 360,000.00 |
| Balance available for dividends | 39,238.05 | 240,961.67 |
| Jan. 1 to Nov. 29, 1926, operating profits | 96,335.20 | 96,335.20 |
| Available for dividends | 135,573.25 | 337,296.87 |
| Jan. 20 to Nov. 30, 1926, dividends paid (see note) | 180,000.00 | 180,000.00 |
| Balance available for dividends | None | 157,296.87 |
| Nov. 30 to Dec. 31, 1926, operating profits | 9,257.44 | 9,257.44 |
| Year 1927, operating profits | 179,542.81 | 179,542.81 |
| Available for dividends | 188,800.25 | 346,097.12 |
| Year 1927, dividends paid | 126,000.00 | 126,000.00 |
| Balance available | 62,800.25 | 220,097.12 |
| Jan. 1 to Mar. 31, 1928, operating loss | (9,604.89) | (9,604.89) |
| Available for dividends | 53,195.36 | 210,492.23 |
| Jan. 19 to Mar. 31, 1928, dividends paid (see note) | 60,000.00 | 60,000.00 |
| Balance available for dividends | None | 150,492.23 |
| Apr. 1 to Dec. 31, 1928, operating loss | (29,454.98) | (29,454.98) |
| Available for dividends | (29,454.98) | (121,037.25) |
| May 1 to Dec. 1, 1928, dividends paid (see note) | 120,000.00 | 120,000.00 |
| Balance available for dividends | (29,454.98) | (1,037.25) |

NOTE: Petitioners accordingly contend that the dividends paid on the following dates were paid out of capital to the extent that they exceeded the "earnings or profits" available on the date of payment, as follows:

| Date of payment | Amount of dividend | Earnings available | Paid from earnings | Paid from capital |
|---|---|---|---|---|
| Year 1922 | $104,000 | ($4,459.91) | None | $104,000.00 |
| Jan. 10, 1923 | 24,000 | 3,220.74 | 3,220.74 | 20,779.26 |
| Jan. 20 to Nov. 30, 1926 | 180,000 | 135,573.25 | 135,573.25 | 44,426.75 |
| Jan. 19 to Mar. 31, 1928 | 60,000 | 53,195.36 | 53,195.36 | 6,804.64 |
| May 1 to Dec. 31, 1928 | 120,000 | 29,454.98 | None | 120,000.00 |

If the respondent's method is correct, it is apparent that the corporation at all times had sufficient earnings or profits to pay each and every dividend, in which event the entire amount of the dividends paid during 1928 would be income to petitioners in that year. If the petitioners' method is correct, it is apparent that of the $180,000 dividends paid during 1928 only $53,195.36 was paid from earnings or profits, and the balance or $126,804.64 was paid from capital. One third of $126,804.64 (each petitioner received one third of the dividends paid) is $42,268.21, which is the amount petitioners claim was paid out of capital during the taxable year.

The only difference between the two methods involves the treatment afforded the operating loss of $532,026.24 in 1920, carried through to December 31, 1928. Petitioners contend that before there could be any "earnings or profits accumulated" this loss would have to be made good by subsequent profits. The respondent contends that the loss was partially made good to the extent of the paid-in surplus of $326,502.88, and that only $205,523.36 of the loss should be made good out of subsequent profits.

We think petitioners' contention must be sustained. *J. L. Washburn*, 16 B.T.A. 1091; *Louise Glassell Shorb*, 22 B.T.A. 644, acquiesced in by the Commissioner, C.B. X–1, p. 60. In the *Shorb* case we said:

It is our opinion that in the case of a corporation organized subsequent to March 1, 1913, there can be no accumulated earnings or profits until an operating deficit is made good, and that the Glassell Development Company did not have in 1924 any accumulated profits or earnings from which to pay dividends. The distribution in question was, therefore, made out of capital and did not constitute taxable income to the recipients. *J. L. Washburn*, 16 B.T.A. 1091.

Counsel for respondent in his brief bases his whole argument upon the assumption that petitioners' surplus of $326,502.38 was earned surplus, but the allegations of the petition are to the contrary and respondent in his answer has admitted that the facts alleged in the petition are true. Respondent seems to assume that the surplus of $326,502.38 was earned surplus by assuming that it was earned surplus of the partnership, J. L. Stifel & Sons, and therefore it retained its same character when it was transferred to the newly created corporation, J. L. Stifel & Sons, notwithstanding it was set up on the books of the corporation as "Paid in Surplus." Respondent's contention in this respect might be correct, although we do not undertake to decide that question at this time, if we had proof before us that the surplus in question was earned surplus while in the hands of the partnership. Cf. *Helen V. Crocker*, 29 B.T.A. 773, and cases there cited. But we have no proof whatever that the

$326,502.88 in question was earned surplus in the hands of the partnership. The allegations of the petition on this point are as follows:

(b) The J. L. Stifel & Sons Corporation was organized on June 1, 1920, under the laws of the State of West Virginia. It took over the business of J. L. Stifel & Sons, a co-partnership, on June 1, 1920. It issued to the partners of J. L. Stifel & Sons co-partnership 12,000 shares of its preferred stock, par value $100.00 and 60,000 shares of no par value common stock, set up on its books at $30. per share. This stock issuance represented a capitalization of $3,000,-000.00, $1,200,000.00 in preferred stock and $1,800,000.00 in no-par common stock. Petitioner owned 4,000 shares of preferred stock and 20,000 shares of no par common stock of J. L. Stifel & Sons Corporation.

(c) The fair market value of the partnership assets paid in for the preferred and common stock of J. L. Stifel & Sons at the time of organization was $3,326,502.88 which was applied as follows:

| | |
|---|---|
| Preferred stock | $1,200,000.00 |
| No Par Common Stock | 1,800,000.00 |
| Paid in surplus | 326,502.88 |

These allegations were admitted to be true by respondent in his answer. From an inspection of the above quoted allegations in the petition it will be seen that there is no allegation that the partnership had any accumulated earnings at the time of the transfer of its assets to the corporation. The allegations simply are that these partnership assets had a fair market value of $3,326,502.88 and were paid in to the new corporation as $3,000,000 capital stock and $326,502.88 paid-in surplus. Therefore our decision must be based on the fact that petitioners' surplus was a paid-in surplus and not an earned surplus. There is nothing on which to base any other assumption. As we have already pointed out, the law governing the two situations is quite different. The court in *Thorsen* v. *Commissioner*, 65 Fed. (2d) 234, pointed out this distinction in the following language:

In *Leland* v. *Commissioner*, 50 Fed. (2d) 523 (C.C.A. 1, 1931), the surplus was paid in, not earned; the court assumed that such a paid in surplus, if diminished by losses, could be restored out of later profits, in holding that the losses of 1921, the year of incorporation, would be deductible from the profits of the succeeding years, in determining the taxability of a subsequent dividend distribution. There was, of course, on January 1, 1921, no earned surplus from which these losses could have been deducted. Unlike an earned surplus, a paid in surplus is, for these purposes, properly treated like capital.

Was the validity of the distinction heretofore made by the Board and the courts between the treatment of paid-in surplus and earned surplus impaired by the recent decision of the Supreme Court in *Helvering* v. *Canfield* and *Thorsen* v. *Helvering*, 291 U.S. 163? We think not.

Mr. Chief Justice Hughes, in delivering the opinion of the Court in those cases, took pains to point out that the Court was dealing with

earned surplus and not paid-in surplus. In discussing this phase of the case he said:

The argument that the surplus of March 1, 1913, constituted capital is unavailing. We are not here concerned with capital in the sense of fixed or paid-in capital, which is not to be impaired, or with the restoration of such capital where there has been impairment. No case of impairment of capital is presented. We are dealing with a distribution of accumulated profits. Nor is it important that the accumulated profits as they stood on March 1, 1913, constituted capital of the company as distinguished from the gains or income which the company subsequently realized. When a corporation continued in business after March 1, 1913, the dividends it later declared and paid to its stockholders, whether out of current earnings or from profits accumulated prior to that date, constituted income to the stockholders, and not capital, and were taxable as income if the Congress saw fit to impose the tax. *Lynch* v. *Hornby*, 247 U.S. 339. The provision of the Act of Congress under consideration was a " concession to the equity of stockholders " with respect to receipts as to which they had no constitutional immunity. There is no question here of the receipt of " capital."

It seems to us that there is nothing said in the Supreme Court's opinion in the *Canfield* and *Thorsen* cases which overrules our holding in the *Shorb* case and other cases to the effect that in the case of a corporation organized subsequent to March 1, 1913, there can be no accumulated earnings or profits until an operating deficit is made good. It is true that under the laws of some states a corporation is permitted to declare dividends out of its paid-in surplus without having earnings or profits available for such a dividend, but a dividend so declared would be a return of capital to the stockholder and would not be a taxable distribution to him, except in cases where the amount received exceeds the cost basis of the stock. Distributions from capital other than distributions in liquidation are applied against and reduce the basis of the stock. This is made so by reason of section 115 (d) of the Revenue Act of 1928. For the reasons above stated we sustain petitioners' assignment of error.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SEAWELL, dissenting: The opinion of the Board in this case appears to me to be in conflict with the applicable statutes and the decision of the Supreme Court in the *Canfield* and *Thorsen* cases, decided January 15, 1934.