*140 OPINION.
Seawell:
The first issue we shall consider and determine is whether the amounts paid by the trustees under the will of Morton F. Plant for the upkeep of the home at Eastern Point, Connecticut, out of income from the trusts established by him, constitute income to the petitioner.
*141 This issue arises out of paragraph tenth of Morton F. Plant’s will, which is set out in the findings of fact. The Commissioner determined that the expense of maintaining the residence as provided in the will was additional income to the petitioner, who was thereby relieved of such expense on the residence occupied by him. The petitioner traverses this determination. We do not think Old Colony Trust Co. v. Commissioner, 279 U.S. 716, cited and relied on by the respondent, sustains his contention. The principle enunciated in that case is not applicable.
On the issue in the instant proceedings we are dealing with specific sections of the statutes imposing tax upon trust income, and where such tax is imposed primarily upon the trustee or trustees. The statutes involved are found in the Bevenue Acts of 1924, 1926, and 1928, and are substantially the same in all three acts. The sections principally relied on by petitioner as applicable are not set forth herein, but are merely referred to as sections 219 (a), 219 (a)(2), 219 (b), and 219 (b)(2) of the 1924 and 1926 Acts, and sections 161 (a), 161 (a) (2), 161 (b), and 162 (b) of the 1928 Act.
In John D. Rogers, Trustee, 16 B.T.A. 368, we had before us a case in which the facts are similar to those in the instant case. The testator, John D. Eogers, died in 1908, devising his plantation in Texas to the Texas Guarantee & Trust Co. in trust, which company declined to qualify and the petitioner, John D. Eogers, a grandson and one of the beneficiaries under the will, was appointed as trustee, the trust providing in part as follows:
To control, manage and operate said plantation with power to lease or rent the whole or any part thereof from year to year, and after paying all costs and expenses, including, among other things, the cost of keeping up and maintaining improvements and equipment on said Plantation and taxes, and after deducting reasonable compensation (not to exceed $500.00 per annum) to said Company for its services hereunder, to pay over annually one half (%) of the rents and revenues from said Plantation to my son, Robert A. Rogers, for and during his natural life and the other one half (%) of such rents and revenues from said Plantation to my son Robert A. Rogers as Trustee for my grandchildren. * * *
The will provided that the plantation should not be sold, but such provision was revoked by a codicil, which also provided: “ Furthermore, until sale of plantation, the trustee shall retain out of proceeds of each year’s crop sufficient to operate plantation the following year.”
The deficiencies in tax were for the years 1923 and 1924, and were determined against the petitioner, this Board following the reasoning of the Circuit Court of Appeals for the Eighth Circuit in Willcuts v. Ordway, 19 Fed. (2d) 917, and holding that under the will and codicil of Borers the beneficiaries had no distributable interest *142 until all costs of operation of the current year had been paid and a sum retained for operations of the following year.
In Willcuts v. Ordway, supra, the court had occasion to interpret and apply the meaning of “ distribution ” and “ distributed ” as used in the 1916, 1918, and 1921 Revenue Acts (which construction we followed in the John D. Rogers, Trustee, case, supra), and in so doing, the court said in part:
* * * In each of these acts, the intent is that annual income to a particular beneficiary from a trust estate shall he taxed to him as a separate unit of taxation where that income is “ distributed ” to him. “ Distribution,” as there used, does not necessarily mean passing into the uncontrolled possession and disposition of the beneficiary. It means separation and segregation from the trust estate so that it no longer forms any part or parcel thereof. The test set up by the statute is whether the income passes from the trust estate which produced it and ceases to be subject to the terms and control of that trust. * * *
We adopted and applied the same reasoning and principle in Margaret B. Sparrow et al., Trustees, 18 B.T.A. 1, 16, 17, wherein we stated:
We are of the opinion that Margaret B. Sparrow did not have a life estate in the premises. The will specifically provides that she “ shall have the right to occupy such residence, * * * without the payment of any rent or charge therefor.” This would imply that she could not lease the premises and that she would not be entitled to receive rents or profits from the premises should they be leased by the trustees. All such rents and profits would be payable to the trustees. Her only right in the premises is to occupy them. Nowhere does it appear in the will that the testator intended his widow to assume the obligations of a life tenant. She was not required to prevent' waste, keep down encumbrances and charges, to pay interest on mortgages, if any such rested on the property, or to contribute toward paying off mortgages. Since the premises in question were a part of the corpus of the trust estate, the trustees clearly had authority to make necessary repairs upon them. Clearly, if the trustees had rented the premises and derived rent therefrom, no question could be raised but that they would be entitled to deduct from the gross income of the estate the amounts paid by them for necessary repairs. We think the situation is no different merely because by the provisions of the will the testator’s widow was permitted to occupy the premises. Nor do we think that there is any necessary implication that the testator intended that his widow should bear the expense of necessary repairs. He provided that the trustees should pay over to the widow a sum “ equal to the amount of the annual taxes, water rates, assessments, and insurance charges ” upon the property. Paragraph “ Thirteenth ” of the will provided, however, that the widow should occupy the premises “ without the payment of any rent or charge therefor.” As we construe the will, the widow was not chargeable with repairs upon the premises and, since the premises were included in the corpus of the trust' estate, thé trustees clearly had implied authority to make necessary repairs.
We are of the opinion and hold that the mere right or privilege possessed by the petitioner under the terms of the will to occupy the former home of the testator, so long as he might desire, is not *143 in the sense of the statute income to the petitioner. The precisions of the will did not authorize nor permit the petitioner to lease the premises and receive the rents therefrom for his own separate use and benefit to do with as he might see fit, but the amounts used in the matter of the upkeep of the premises were expenditures made by the trustees pursuant to the specific directions of the will, the petitioner, so far as the record discloses, having no control over the amounts.
We hold, therefore, that the income collected by the trustees and so expended by them in maintenance of the premises, including the payment of taxes thereon, pursuant to provisions of the will1, did not represent “ income ” distributed or distributable to the petitioner herein within the meaning of that term as laid down by the Supreme Court in Eisner v. Macomber, 252 U.S. 189, and the respondent erred in determining otherwise.
The only other question in dispute relates to distributions made by the Griswold Co., in which the petitioner shared to the extent of one half. The amounts of distributions considered by the Commissioner as taxable dividends to the petitioner are set forth in our findings of fact.
The petitioner contends that no part of the distributions made by the Griswold Co. for the years in issue is taxable to him. The record shows that the company made earnings and profits during the six years in issue, 1924 to 1929, inclusive, of $951,711.40, or $309,711.40 more than the aggregate amount of distributions to its stockholders during that time. It is the insistence of petitioner that during that entire time the corporation had an operating deficit and the distributions represented a return of capital and are not taxable distributions from accumulated earnings and profits within the applicable provisions of the revenue acts. The respondent contends that the distributions taxed to petitioner were from earnings of the corporation accumulated since March 1, 1913, were paid out of surplus, and are taxable.
The record shows that beginning with March 1, 1913, the corporation had a small surplus of $4,811.64 and that in that year and years .subsequent to January 1, 1921, it sustained losses, there being an operating deficit on the latter date of $1,035,818.02. In 1921 and 1922 there were earnings, which reduced the deficit, leaving a deficit as of January 1, 1923, of $1,017,978¡63. In the latter year, however, there was a loss of $493,979.51, which, added to the prior existing deficit, makes a total of $1,511,958.14. During 1923 the stockholders made a donation to the corporation of 10,400 shares of its stock, having a par value of $1,040,000, and transferred property to the corporation having a value in excess of the par1 value of the stock *144 issued for such property, in tbe amount of $672,000, resulting in the books of the corporation no longer showing a deficit, but a surplus on January 1, 1924, of $200,041.86. The record also shows that in 1924 there was transferred to the Griswold Co. certain property which was set up on the books of the company substantially on the basis of the valuation made for Federal estate tax purposes. For that property the company issued 480 shares of its treasury stock, such stock account being credited with the par value thereof, $48,000, and the balance, excess of value of property over par value of stock received, $67,200, credited to surplus as fully set forth in our findings of fact.
While the respondent contends that the amount of the distributions taxed to the petitioner were from earnings accumulated since March 1, 1918, and were paid out of surplus and are taxable, such contention can not be sustained in the light of this record, except on the assumption that the contributions by the stockholders of the Griswold Co. to it of stock and property as aforesaid constituted “earnings or profits accumulated since February 28, 1913.” The facts as stipulated and set forth in our findings of fact show that the operating deficit of the company on January 1, 1923, was $1,017,-978.63, and there were never any actual earnings of the company after that, including all the years in issue, to make good or wipe out that deficit, the actual earnings during the years in issue being $951,711.40, or $66,267.23 less than the operating deficit. Under such circumstances, shown in detail in our findings of fact, there is not, in our opinion, any justification for the respondent’s determination that the distributions to stockholders made during the taxable years in issue, amounting to $642,000, were made from earnings or profits accumulated since February 28, 1913, within the meaning of the applicable revenue acts. Such dividend distributions as were made to stockholders during the taxable years in issue were, in our opinion, and we so hold, made from capital or “ paid-in surplus,” distinguished from actual earnings or profits, constituting an “ earned surplus.” The record shows there was an operating deficit during the entire time, 1924 to 1929, inclusive, which exceeded in amount all the earnings or profits made during such period. This is fully and clearly shown in our findings of fact. The facts bring these cases within the rule and make applicable the principle that a paid-in surplus must be treated like capital, and dividends paid while there is an operating deficit should be deemed to be from capital or paid-in surplus, even though there are earnings of the taxable year sufficient to pay the dividends paid in that year in whole or in part.
In our opinion, the determination of the issue discussed is controlled by Arthur G. Stifel, 29 B.T.A. 1145, and renders unnecessary *145 a further discussion of this issue, which we determine in favor of the petitioner.
The record shows that the respondent admits that petitioner’s income for 1929 should not have been increased by $3,240.08 representing a portion of fiduciary commissions disallowed as a deduction by reason of prorating such commissions between taxable and nontaxable income.

Decision will be entered wider Rule 50.