Considered by STERNHAGEN and ARUNDELL.

---

H. H. BROWN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7967.    Promulgated September 19, 1927.

1. Percentages of certain debts held properly deductible as worthless in the year 1922.

2. Massachusetts state and town taxes which become a liability and accrued within a fiscal year are allowable deductions from gross income in such year.

*Thomas Proctor, Esq.,* and *John T. Drury, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

This proceeding results from the determination by the respondent of a deficiency in income and profits taxes for the fiscal year ended June 30, 1922, in the amount of $3,734.79. The deficiency is due to the disallowance by the respondent of deductions claimed for debts alleged to have been ascertained to be worthless and charged off within the year, and for local and state taxes accrued.

FINDINGS OF FACT.

Petitioner is a Massachusetts corporation with principal office at North Brookfield. It maintained its books of accounts and reported its income for the fiscal year ended June 30, 1922, on the accrual basis. It was engaged in the business of the manufacture and sale of shoes until June 30, 1922. On that date, Charles C. Beebe, who was and is its president, and, together with his family, the principal stockholder, wished to retire from active business and turn the same over to his associates. The H. H. Brown Shoe Co. was accordingly organized to carry out this purpose. The business of petitioner was taken over by

the new corporation on June 30, 1922. Thereafter, petitioner carried on no active business, but remained in existence only for the purpose of winding up its affairs.

During the month of June, 1922, the president of petitioner and the bookkeeper went over a list of all accounts receivable. From their combined knowledge of financial conditions of the respective debtors, together with their belief as to possible future collections, they concluded that certain percentages of five debts were uncollectible, and the president accordingly directed the bookkeeper to charge off on the books of account such percentages as worthless. During the month of August, 1922, one of the employees of petitioner advised its president thåt a reserve should have been set up and the percentages of the worthless debts charged to the same, which was ordered done.

The J. W. Jenkins Shoe Co. account had been running since 1920. The company had stores at Dallas, Tex., and Shreveport, La. The financial difficulties of the company were caused by a large purchase of shoes just prior to a decline of 50 per cent in the price of shoes. Jenkins, the president of the company, was a personal friend of the president of petitioner and often called upon the latter for guidance and advice in the conduct of his business. The financial condition of the company was well known to the president of petitioner. In June, 1921, the financial condition of the company became precarious, and the creditors, including petitioner, met and agreed to accept participating certificates for 55 per cent of their accounts and notes payable at future dates for the remaining 45 per cent. Subsequently, during the year 1922, the creditors, including petitioner, held several meetings, to consider the financial condition of the company. Some of the creditors continued to consign goods to the company, despite its financial condition. These creditors, however, refused to continue to consign goods to the company, unless all the creditors made an assignment of their accounts. Such assignment to an adjuster was made in August, 1923, and Jenkins assigned the assets he had at that time for the benefit of his creditors. The company account on petitioner's books at the end of the fiscal year was $11,077.64. The last payment prior to the end of the fiscal year was for $186, made on May 19, 1922. During the month of June, 1922, the president of petitioner concluded that not more than 25 per cent of the company's accounts could be collected and instructed the bookkeeper to charge off 75 per cent thereof as worthless. Subsequently, during the years 1922 and 1923, petitioner collected $2,248.32.

An account owed petitioner by the Hollins Shoe Co., at the end of the fiscal year 1922, totaled $3,009.63 and had been running since 1920, in which latter year the company had become financially in-

volved. Hollins, the president of the company, had stated to the petitioner that the company had disposed of all their assets save some real estate. With this information and knowledge of the value of the real estate, the president of petitioner concluded, in June 1922, that not more than 25 per cent of the account was collectible and gave directions for 75 per cent of the account to be charged off as noncollectible.

The account of D. W. Brunell Shoe Co. with petitioner, on June 30, 1922, was $1,286.05. It had been running since 1920 and 1921. The company made an assignment to A. W. Cox & Co. during the year 1921. Soon after such assignment, the assignee sent a statement to all creditors, showing that about 66 per cent could be expected to be collected if the assets were realized upon in full. By June 30, 1922, petitioner had received 25 per cent. The president of petitioner concluded, in June 1922, that not more than 25 per cent of the remaining balance could be expected and gave directions for the charging off of the remaining 75 per cent thereof. Subsequent to June 30, 1922, petitioner collected $526.02.

On June 30, 1922, a firm known as Basch, Jacobs & Schur owed petitioner $727.20. The president of petitioner, based upon his knowledge of the financial condition of the debtor, gave instructions to the bookkeeper to charge off 75 per cent of the account as uncollectible on June 30, 1922. On August 2, 1922, the creditors of the debtor accepted a settlement for 25 cents on the dollar.

An account of $96.51 appeared on petitioner's books on June 30, 1922, against the Bank of Greenwood, and was due to the failure of the bank between the time a check thereon was mailed by a customer and the presentation for collection by petitioner. The president of petitioner, based upon a knowledge of the resources of the bank, concluded that not more than 50 per cent thereof could be collected and directed his bookkeeper to charge off 50 per cent thereof before June 30, 1922. Subsequent to June 30, 1922, the sum of $58.45 was collected.

On June 30, 1922, petitioner followed its theretofore established practice of accruing local and state taxes, by setting up a reserve in the amount of $3,821.24. Such taxes were paid to the State of Massachusetts and the town of North Brookfield, on September 26, 1922, in the amounts of $2,522.71 and $1,264.85, respectively. The Massachusetts taxable year commences on April 1 of each year and the taxes are due and payable in the October following.

On September 27, 1922, petitioner received from the H. H. Brown Shoe Co. cash, as follows, to reimburse petitioner for portions of the state and local taxes, which the shoe company had theretofore agreed to pay: state taxes, $946.02, and town taxes, $948.64.

OPINION.

MILLIKEN: The first issue relates to the five accounts appearing on petitioner's books at June 30, 1922, totaling $16,197.03 and upon which a deduction of $12,149.45 is claimed. The action of the president of petitioner in charging off on the books of account the percentages recited in the findings of fact was based upon his detailed knowledge with respect to each account. The ascertainment of the worthlessness of a debt, either in whole or in part, is the exercise of sound business judgment based upon as complete information as is practicably obtainable. The president of petitioner, acting upon the detailed information known to him, reached the conclusion that the petitioner would not be able to recover more than certain percentages of the debts in question. Subsequent collections verified his judgment. We are of the opinion that the respondent should have allowed the deductions claimed by petitioner.

The taxes paid to the commonwealth of Massachusetts and to the town of North Brookfield resolve themselves into two classes—(1) direct taxes on real estate and personal estate, and (2) corporation excise taxes. In Massachusetts taxes on real estate are assessed in the town where it lies, to the person who is either the owner or in possession thereof on the 1st day of April of each year. (Sec. 11, ch. 59, Gen. Laws of Mass. 1921.) Personal estate is assessed to the owner in the town where he is a resident on April 1. (Sec. 18, ch. 59.) Section 37 of chapter 60 provides in part:

Taxes assessed upon land * * * shall with all incidental charges and fees, be a lien thereon from April first in the year of assessment * * *.

Section 19 of chapter 60 provides:

If the assessors are of opinion that the credit of a person taxed is doubtful or that he is about to leave the commonwealth, they may, by a special warrant, direct the collector forthwith, without demand or notice, to compel payment by distress or imprisonment, whether the tax is payable immediately or at a future day, by installments or otherwise.

Section 35 of chapter 60 reads:

If a tax remains unpaid for three months after commitment to the collector, he may maintain an action in his own name against the person assessed therefor in the same manner as for his own debt.

At the time of the decision in *Richardson* v. *Boston*, 148 Mass. 508; 20 N. E. 166, the day of assessment was May 1 instead of April 1, as it now is. In that case the facts were that certain real estate in Boston was assessed as of May 1, 1883, to the then owner. On May 25, 1883, the Commonwealth took the property under the right of eminent domain. The Supreme Judicial Court held that the owner on May 1

was liable for the tax although the lien had been lost, since the Commonwealth was after May 25, both the owner of the property and entitled to tax. After pointing out that the earlier remedies in Massachusetts for the collection of taxes were distress, arrest and suit, the court said:

If, as we think, it is plain that the giving of a lien upon real estate did not displace the earlier remedies of distress and arrest, we can perceive no reason why the existence of such a lien should cut down the absolute generality of the words of the act of 1859. We, therefore, are of opinion, as we have said, that owners of real estate, properly taxed for it, are personally liable for the tax. See *Sherwin* v. *Boston Five Cents Saving Bank*, 137 Mass. 444; *Cochran* v. *Guild*, 106 Mass. 29, 30; *Burr* v. *Wilcox*, 13 Allen, 269, 272; *Wilson* v. *Shearer*, 9 Met. 504, 506; *Sherwin* v. *Wigglesworth*, 129 Mass. 64. As the plaintiffs were personally liable as of May first, and as the failure actually to assess and to collect the tax on that day does not affect their legal position, it has not been argued that, if they had paid them, they could have recovered, as on a partial failure of the consideration of the tax. No such argument could prevail. The plaintiffs, if they have been deprived of their land, have the price paid them in its place, untaxed for the current year. Moreover, when a personal liability is imposed, it might be difficult to say that the consideration of the tax is solely the protection of the particular parcel of land, although the lien is confined to that. *Jennings* v. *Collins*, 99 Mass. 29, 32. *Hayden* v. *Foster*, 13 Pick. 492.

In *Rogers* v. *Gookin*, 198 Mass. 434; 85 N. E. 405, the court said:

All taxes upon real estate are assessed, not primarily to the land but "as to the person who is either the owner or in possession." Pub. Sts. c. 11, Sec. 13, St. 1889, c. 84. *Richardson* v. *Boston*, 148 Mass. 508, 510. The provision is comparatively new that all taxes on real estate should be a lien, distress and arrest being the earlier remedies.

The corporation excise tax as imposed by section 32 of chapter 63, General Laws of Massachusetts, 1922, is assessed as of April 1 of the taxable year. The basis of the assessment is the excess of the fair cash value on that date of the shares of capital stock over certain deductions plus the net income of the corporation as shown by its last Federal income-tax return. In *Springdale Finishing Co.* v. *Commonwealth*, 242 Mass. 37; 136 N. E. 250, the court held that this tax was an excise on the right of a domestic corporation to do business or as the court quaintly put it, "an excise for the commodity of carrying on business." The Finishing Company had on July 29, 1920, conveyed all its property to a Delaware corporation. It dissolved in September, 1920. One question was whether the corporation was liable for the whole tax since it had ceased to do business in July and had dissolved in September. The court answered this question as follows:

The effect of this statute was to impose an excise for the commodity of carrying on business by a domestic corporation for a less period than one year or in cases where such business was not carried on for an entire year.

Under the above authorities, it is clear that all the taxes for which petitioner set up reserves were obligations of the corporation on and after April 1, 1922. The question is whether such taxes were accruable under petitioner's method of accounting.

In *Ernest M. Bull, Executor*, v. *Commissioner*, 7 B. T. A. 993, we held that the estate tax imposed by the Revenue Act of 1918, accrued at the death of the decedent and could be deducted in that year if the books of the estate, which were kept on an accrual basis, accrued the tax as of that year. We there held that there was no merit in the contention that the taxes which were a fixed liability as of the death of a decedent were not deductible, where accounts of the estate were kept on an accrual basis, for the reason that such taxes were not due and payable until one year after the death of the decedent, and that such postponement of payment was merely remedial or procedural. In the present case the same line of reasoning obtains. In both cases the taxes were actual and real personal obligations existing in the year in which it was sought to take the deduction. It was pointed out in the *Bull* case that the exact amount of the tax could not be ascertained until all valuations and adjustments had been made. With respect to this contention, we said:

> The suggestion arises that it is difficult to determine the amount of the estate tax within the period when the first income tax of the estate must be computed and the return audited. This might well give pause. But it is usually no more difficult than the computation of the munitions tax involved in the *Yale & Towne* case or that required by section 1207 of the Revenue Act of 1926 and the earlier regulations, and such difficulty as there may be is not sufficient to counterbalance the considerations already set forth.

The basic idea under the accrual system of accounting is that the books shall immediately reflect obligations and expenses definitely incurred and income definitely earned without regard to whether payment has been made or whether payment is due. Expenses incurred in the operations for a particular year are properly accrued in the accounts for that year, although payment may not be due until the following year. Under the accrual system, the word "accrued" does not signify that the item is due in the sense of being then payable. On the contrary, the accrual system wholly disregards due dates. Neither is it necessary that the amount of an incurred liability be accurately ascertained in order to accrue it.

We are of the opinion that the taxes paid by petitioner to the Commonwealth of Massachusetts and to the town of North Brookfield in October, 1922, were liabilities of petitioner on April 1 of that year and were, under petitioner's system of accounting, deductible from the gross income of the fiscal year ending June 30, 1922.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*