## GEORGE S. COLTON ELASTIC WEB CO. v. UNITED STATES.

### No. 3614.

Circuit Court of Appeals, First Circuit.

Dec. 9, 1940.

Bennett Sanderson, of Boston, Mass. (J. J. Sullivan and Hale, Sanderson, Byrnes & Morton, all of Boston, Mass., on the brief), for appellant.

Eugene E. Angevine, of Washington, D. C. (Samuel O. Clark, Jr., J. Louis Monarch, and Helen R. Carloss, all of Washington, D. C., and Edmund J. Brandon and C. Keefe Hurley, both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and SWEENEY, District Judge.

MAGRUDER, Circuit Judge.

This action was brought for the recovery of alleged overpayments of income and excess profits taxes for the calendar year 1920. A written agreement of the parties[1] has suspended the running of the statute of limitations.

The facts were stipulated below. The appellant is a Massachusetts corporation which kept its books of account and records and prepared its returns of net income on the accrual basis of accounting for calendar years. In 1921 it paid the Massachusetts domestic corporation tax assessed as of April 1, 1921. At that time this tax was ascertained by adding together an amount equal to .5% of the "corporate excess," determined as of April 1, 1921, and an amount equal to 2½% of the corporation's net income as reported to the federal government on its last income tax return prior to April 1, 1921.[2] The amount paid under the first factor was deducted in the federal return for 1921, and no question is raised as to the propriety of that deduction. The amount paid under the second factor was $3,336.27. The sole issue involved in the present appeal is whether or not this sum "accrued", within the meaning of Section 234(a) of the Revenue Act of 1918,[3] during 1920, and thus became deductible from the appellant's gross income for that year.

---

[1] Entered into in accordance with § 608 (b) (2) of the Revenue Act of 1928, 45 Stat. 874, as amended, 48 Stat. 756, 26 U.S.C.A.Int.Rev.Code, § 3774.

[2] Mass.General Acts of 1919, c. 355:

"Part I. Domestic Corporation Tax.

"Section 1. When used in Part I of this act:—* * *

"(2) The term 'taxable year' shall mean the fiscal year of the corporation.

"(3) The term 'corporate excess' shall mean the fair cash value of all the shares constituting the capital stock of a corporation on the first day of April when the return called for by section four of this act is due. * * *

"Section 2. Except as is otherwise provided in this section, every domestic business corporation shall be subject to pay annually, with respect to the carrying on or doing of business by it, an excise tax equal to the sum of the following:—

"(1) An amount equal to five dollars per thousand upon the value of its corporate excess.

"(2) An amount equal to two and one half per cent of that part of its net income as hereinafter defined, which is derived from business carried on within this commonwealth. * * *

"Section 3. Except as provided in the last paragraph of section two, the term 'net income', shall mean the net income for the taxable year as required to be reported by the corporation in its last prior return to the federal government as defined in the federal revenue act of nineteen hundred and eighteen * * *.

"Section 4. Every such corporation shall, within the first ten days of April, make a return as of April first, sworn to by the treasurer or assistant treasurer, or in their absence or incapacity by any other principal officer, in such form as the tax commissioner may prescribe * * *."

[3] "Sec. 234. (a) That in computing the net income of a corporation * * * there shall be allowed as deductions: * * *

"(3) Taxes paid or accrued within the taxable year * * *." 40 Stat. 1077.

204

In essence, our decision must turn upon the question whether, for income tax accounting purposes, the two factors comprising the Massachusetts domestic corporation tax should be regarded as a single, indivisible unit or as separate items. If the tax is regarded as a unit, then the total amount of the tax could not be ascertained until April 1, 1921, since by definition the amount of "corporate excess" could be determined only as of that date. If, however, the tax should be regarded as comprised of two separable items, then the amount due under Section 2(2), fixed as a percentage of the taxpayer's net income for 1920, was mathematically determinable on December 31, 1920. The court below, disallowing the deduction, ruled that the tax must be regarded as a single, inseparable item, in view of the language of the Massachusetts Supreme Judicial Court that "This tax is a single excise * * *." Springdale Finishing Co. v. Commonwealth, 1922, 242 Mass. 37, 136 N.E. 250, 251.[4]

■ We do not think this language is determinative of the issue in the case at bar. Certainly the characterization of the excise as "single", apparently directed to the question of constitutionality, is not conclusive upon us in determining how the Massachusetts tax is to be treated for federal income tax purposes. However, as an interpretation of the Massachusetts statute involved, and as an indication of the liabilities of corporate taxpayers under that act, the Springdale decision is of course binding upon us. The case involved a corporation which sold out its business in July, 1920. During 1920 it had paid the domestic corporation tax based upon its "corporate excess" as of April 1, 1920, and its net income during the calendar year 1919. The Commonwealth of Massachusetts, contending that this payment did not free the corporation from liability for a further payment of a corporate excise tax based upon the net income earned

during 1920, accelerated the due date of the tax under General Laws, c. 63, § 76,[5] and brought suit for the tax otherwise payable in October, 1921. The taxpayer contended that, having paid the tax assessable as of April 1, 1920, it had paid for the privilege of doing business during that calendar year; that to assess a further tax was either to tax it twice for the same privilege (doing business in 1920) or once for a privilege which it never could or did exercise (doing business in 1921). The Massachusetts court held that the second tax was rightly assessed. Chief Justice Rugg explained: "This tax is a single excise * *. Although both property and income are used as a basis for its calculation, the tax is nevertheless an excise on the commodity of exercising the corporate franchise * * *. The tax here assailed was levied in respect to the doing of business during the calendar year beginning on January 1, 1920. This is the plain effect of said chapter 355. That act was approved on July 24, 1919. By section 33 it went into effect on January 1, 1920. The first return under the act was required to be filed by the corporation during the first ten days of April, 1920, as of the 1st day of that April. Section 4. The items of that return included the corporate excess as of that 1st day of April and the 'net income for the taxable year as required to be reported by the corporation in its last prior return to the federal government.' [§ 3.] That 'last prior return' was and of necessity must have been for the calendar year 1919. The next excise tax, being that here in question, was levied in respect to the doing of business during the calendar year beginning with January 1, 1920. This part of the excise is levied for a period of time that is past and not for a period in the future. The effect of the statute was to impose an excise for the commodity of carrying on business by a domestic corporation for a less period than one year, in cases where such business was not carried on for an entire year. * * *

---

[4] The District Court reached the same result, for the same reason, in Consolidated Dry Goods Co. v. United States, 35 F.Supp. 523. That case involved the same issues and, by stipulation of the parties, it will be governed on appeal by our decision in this case.

[5] "The sale or transfer, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the corporation's business, of any part or the whole of the assets of a domestic business corporation shall be fraudulent and void as against the commonwealth, unless such corporation shall, at least five days before the sale or transfer, notify the [tax] commissioner of the proposed sale or transfer * * *. Whenever such a corporation shall make such a sale or transfer, the tax * * * shall become due and payable at the time when the commissioner is so notified, or, if he is not so notified, at the time when he should have been notified."

"The petitioner enjoyed the commodity of carrying on business as usual until July 29, 1920. * * * These corporate activities are legally subject to an excise. * * *"

What the court meant by describing the tax as a "single excise" was that the tax, though made up of two components, was levied on a single commodity, that is, the exercise of the corporate franchise during the calendar year preceding the April first as of which the corporate excess was calculated. That these two components in truth were separable was demonstrated by what happened in the Springdale case itself; the tax there sustained was based solely on the net income of the corporation earned during the early months of 1920 before it went out of business.

█ It becomes apparent that that portion of the tax claimed as a deduction by the taxpayer in the present case, although paid during 1921, was exacted for the privilege of doing business during 1920 and that it became an inescapable liability during that year. The corporation could, of course, have escaped payment of that part of the tax calculated on its "corporate excess" had it dissolved prior to April 1, 1921; and at any rate the amount of this factor could not be determined until that date. No such choice was open in regard to that part of the tax determined by the taxpayer's net income; as of December 31, 1920, the amount of excise to be paid under this factor became mathematically ascertainable and its ultimate payment inevitable. Springdale Finishing Co. v. Commonwealth, 1922, 242 Mass. 37, 136 N.E. 250; Commonwealth of Massachusetts v. Meehan, 1 Cir., 1933, 67 F.2d 638.

The Supreme Court has had occasion to define the requirements of "accrual" of taxes. In United States v. Anderson, 1926, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, the taxpayer had attempted to deduct the munitions tax[6] from his gross income for 1917. The munitions tax was calculated on a basis of the taxpayer's 1916 gross income, but was not "assessed" and did not become "due" until much later in 1917. In holding that the deduction should have been taken in 1916, Mr. Justice Stone said (pages 440, 441 of 269 U.S., page 134 of 46 S.Ct., 70 L.Ed. 347):

"Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect * * * the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books."

To the same effect, see American National Co. v. United States, 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946; Niles Bement Pond Co. v. United States, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901; Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 51 S.Ct. 11, 75 L.Ed. 234. Cf. Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397.

We think that the deduction sought by the present appellant, representing taxes exacted for the privilege of doing business in 1920 and ascertainable in that year, was a proper deduction from 1920 gross income and should have been allowed. In the case of the taxpayer whose books are kept on an accrual basis, "while the taxes for any year are not payable until the following year, good accounting practice requires an accrual of them as a liability of the current year's business * * *. A corporation cannot claim to have accumulated any net income in any year until provision is made for taxes accrued, based on net income for the same year." Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 145, 75 L.Ed. 397. Had the Massachusetts law provided for two formally separate taxes, each calculated on a basis of one of the factors, there could be no doubt in view of the Anderson case that that tax based on 1920 net income "accrued" in 1920. We can see no reason why the formally composite nature of the excise should necessitate a contrary result. The fact that a further indefinite impost may be levied is scarcely a valid reason for refusing to permit the accrual of that which is already certain.

The Massachusetts Department of Corporations and Taxation has consistently ruled that the income portion of the Massachusetts domestic corporation tax becomes a liability of the taxpayer in the year in

---

[6] Revenue Act of 1916, § 300 et seq., 39 Stat. 780.

which the income is earned and has always permitted the accrual of that amount in that year. Prentice-Hall Mass. Tax Serv., 11th Ed., pars. 10,312, 10,314. A close analogy may be found in a ruling by the General Counsel for the Internal Revenue Bureau that one-tenth of the federal social security tax,[7] which is calculated as a percentage of wages paid by the employer, is to be accrued during the period when the wages are paid. The other nine-tenths of the same excise cannot be accrued until later, since the taxpayer's liability is dependent upon a certification of the state law which might create a credit up to nine-tenths of the total tax. G.C.M. 19,692, 1938-1 Cum. Bull. 148. It seems clear, therefore, that the formal unity of a presently uncertain tax does not prevent the accrual of any portion of it as of the time that portion becomes certain.

We are aware of authority which would suggest a decision contrary to ours, but we do not consider it persuasive since it apparently results from a fundamental misconception of the Massachusetts corporation excise law. In H. H. Brown Co. v. Commissioner, 1927, 8 B.T.A. 112, the taxpayer sought to accrue its entire Massachusetts domestic corporation tax, assessable as of April 1, on the ensuing June 30, the close of its accounting year. The Board held that this was permissible. While the holding is not precisely in point, it might follow as a corollary that an earlier accrual of a portion of the tax would have been regarded as improper. At any rate, the Board based its decision upon the assumption that "The corporation excise tax * * is assessed as of April 1 of the taxable year"—a statement which is erroneous in view of the Springdale decision which determined the "taxable year" to be the federal income tax year preceding the April 1 assessment date. Cf. National Casket Co., Inc., v. Commissioner, 1933, 29 B.T.A. 139, reversed in part, 3 Cir., 1935, 78 F.2d 940. That the Board might have reached a decision agreeing with ours had not its construction of the Massachusetts statute been erroneous, is indicated by its exposition of the applicable principles: "The basic idea under the accrual system of accounting is that the books shall immediately reflect obligations and expenses definitely incurred and income definitely earned without regard to whether payment has been made or whether payment is due. Expenses incurred in the operations for a particular year are properly accrued in the accounts for that year, although payment may not be due until the following year. Under the accrual system, the word 'accrued' does not signify that the item is due in the sense of being then payable. On the contrary, the accrual system wholly disregards due dates." 8 B.T.A. at page 117. It seems clear to us that the deduction sought in the present case was an expense "incurred in the operations for" 1920 and was therefore "properly accrued in the accounts for that year."

A second apparently contrary ruling is found in G.C.M. 6616, IX-2 Cum.Bull. 335 (1930). There a taxpayer sought to accrue the total Massachusetts domestic corporation taxes, payable in 1921 and 1922, during its fiscal year ending March 31, 1922. Naturally it was held that such an accrual was improper. The memorandum decided, how-

---

[7] 42 U.S.C.A. § 1101, et seq., 49 Stat. 639, § 901 et seq.

Provisions for credit against the tax are as follows:

"Sec. 902 [§ 1102]. [Credit against tax.] The taxpayer may credit against the tax imposed by section 901 [1101 of this chapter] the amount of contributions, with respect to employment during the taxable year, paid by him (before the date of filing his return for the taxable year) into an unemployment fund under a State law. The total credit allowed to a taxpayer under this section for all contributions paid into unemployment funds with respect to employment during such taxable year shall not exceed 90 per centum of the tax against which it is credited, and credit shall be allowed only for contributions made under the laws of States certified for the taxable year as provided in section 903 [1103 of this chapter]."

"Sec. 903 [§ 1103]. [Approval and certification of state laws.] (a) The Social Security Board shall approve any State law submitted to it, within thirty days of such submission, which it finds provides that [certain specified criteria are complied with].

"(b) On December 31 in each taxable year the Board shall certify to the Secretary of the Treasury each State whose law it has previously approved, except that it shall not certify any State which, after reasonable notice and opportunity for hearing to the State agency, the Board finds has changed its law so that it no longer contains the provisions specified in subsection (a) or has with respect to such taxable year failed to comply substantially with any such provision."

ever, that each tax should be considered as a unit. It therefore allowed a deduction of the entire tax payable in 1921 from the taxpayer's gross income for the taxable year April 1, 1921, to March 31, 1922; and it permitted a similar deduction in the following year. It does not appear that the taxpayer argued for separate consideration of the two factors comprising the Massachusetts domestic corporation tax.[8]

The Massachusetts domestic corporation law was amended in 1927 so that valuation of the "corporate excess" was to be made as of the close of the corporation's taxable year. Massachusetts Acts and Resolves, 1927, c. 258, § 3, amending General Laws, c. 63, § 32. Since 1927, therefore, both factors of the excise tax have become calculable simultaneously. Under the law as amended it has been ruled that the entire tax may be accrued against the gross income of the year at the close of which the tax is calculated. G.C.M. 8553, IX-2 Cum. Bull. 109 (1930). We need have no fear, therefore, that our present decision, dealing as it does with income tax returns prior to 1927, will affect current Treasury practice.

The judgment of the District Court is reversed, and the case is remanded to that court, with directions to enter judgment for the plaintiff in accordance with the stipulation.

SWEENEY, District Judge (dissenting).

I think that the decision of the District Court should be affirmed. Springdale Finishing Co. v. Commonwealth, 242 Mass. 37, 40, 136 N.E. 250, holds that this tax is a single excise tax. Whether the use of the word "single" was directed to the question of constitutionality or not, the tax itself appeals to me as a single tax made up of the sum of two factors, one applied to income and the other to excess profits. Treating the tax as a single tax, I do not think that the tax on income accrued during 1920, even though it was ascertainable at the close of that year, because under the rule of United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347, all the events, which fixed the amount of the tax

and determined the liability of the taxpayer to pay it, could not occur until April 1st when the corporate excess was known.

---

[8] The persuasive force of the memorandum is somewhat lessened by its misquotation of the Springdale case, which resulted in a misapprehension of the Massachusetts court's definition of "taxable year." In the paragraph of the Springdale decision set forth above, the memorandum misquotes the original text (referring to "the next excise tax") by speaking of "the net excise tax." The result is to confuse the discussion of the tax litigated in the suit with the discussion of that tax already paid, the propriety of which was unquestioned.