LOREN D. SALE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53133. Promulgated April 23, 1937.

*Claude I. Parker, Esq.*, for the petitioner.
*Thomas F. Callahan, Esq.*, for the respondent.

#### OPINION.

MURDOCK: The Commissioner determined a deficiency of $3,187.80 in the petitioner's income tax for the year 1925. The sole issue is whether or not the Commissioner erred in including in the petitioner's income $19,670.13 as taxable dividends from the Cudahy Walnut Land Co. The facts have been stipulated and may be summarized for present purposes.

The petitioner throughout the year 1925 owned common stock of the Cudahy Walnut Land Co. He received in 1925, as a stockholder of the company, distributions totaling $46,545.50. He did not report any part of this amount as income. The Commissioner held, in determining the deficiency, that 42.26 percent, or $19,670.13, of the total amount received by the petitioner was a taxable dividend representing earnings of the corporation during the period November 15, 1924, to August 5, 1925.

The company at the time of its organization in 1912 acquired real estate in exchange for its stock of the par value of $250,000, and notes of the face value of $875,000. This land was its principal asset and it still owned the land on March 1, 1913, at which time

the land had a fair market value of $2,050,000. The company had no accumulated earnings or profits on March 1, 1913. Thereafter and prior to January 31, 1919, the company acquired a paid-in surplus of $321,235.65 by way of stock assessments. The company paid no dividends prior to June 1, 1923, but during the calendar years 1923 and 1924 it made certain distributions to its stockholders. The last distribution for 1924 was made on November 15. It distributed $278,550 to its stockholders during 1925, the last distribution for that year having been made on August 5.

The parties have stipulated that the expenses of the company for the period from March 1, 1913, to July 31, 1922, exceeded by $798,053.08 its profits from the sale of real estate during that period, using as a basis for the computation of the profits the fair market value of the real estate on March 1, 1913. They have also stipulated that the company had earnings as follows:

| Period | Amount |
|---|---|
| 8/1/22 to 11/28/23 | $180,414.17 |
| 11/28/23 to 11/15/24 | 197,783.65 |
| 11/15/24 to 8/6/25 | 117,725.99 |

The petitioner contends that no part of the distributions of 1925 represented taxable dividends. He argues that the paid-in surplus of $321,235.65 was impaired by the operating losses and had to be restored before there could be any earnings or profits accumulated after February 28, 1913, within the meaning of section 201 (a) of the Revenue Act of 1924; although the fair market value of the property on March 1, 1913, represented an appreciation over the cost of the property of $925,000, that appreciation was unrealized, had not been recognized even on the books of account, and did not represent a true surplus by which losses could be absorbed; and if the unrealized appreciation on March 1, 1913, must be considered, it was at most an enhancement of capital which, if impaired by losses, must be restored before there can be any earnings and profits accumulated after February 28, 1913, within the meaning of section 201 (a) of the Revenue Act of 1924.

There is a rule of law that every impairment of capital or paid-in surplus resulting from operating losses must be restored before any earnings can be available for the distribution of a taxable dividend within the meaning of section 201 (a) of the Revenue Act of 1924. *Crystal Ice Co.*, 14 B. T. A. 682; *J. L. Washburn*, 16 B. T. A. 1091; *Arthur C. Stifel*, 29 B. T. A. 1145; *Willcuts* v. *Milton Dairy Co.*, 275 U. S. 215. But the facts in this case fail to show that either the capital or the paid-in surplus of the Cudahy Walnut Land Co. was ever impaired by operating losses.

The stipulation is clear that, in the computation of the operating loss of $798,053.08, the gain or loss from the sale of real estate was.

computed by using the fair market value of the real estate on March 1, 1913, as a basis. The use of that basis was, of course, entirely proper for the purpose of computing the income tax liability of the corporation. However, the tax liability of the corporation is not involved in the present case. The taxpayer here is an individual, and the question is whether or not he received a dividend taxable to him. Dividend is defined as "any distribution made by a corporation to its shareholders * * * out of its earnings or profits accumulated after February 28, 1913." Sec. 201 (a). The statute is not specific as to how "earnings or profits accumulated after February 28, 1913" shall be computed. The question might arise as to whether cost or March 1, 1913, value should be used in the computation of those earnings or profits.[1] However, the solution of that question is not important in the decision of this case, for the parties have stipulated what the earnings of the corporation were for the period beginning immediately after the last distribution of 1924 and ending with the last distribution of 1925, the Commissioner has taxed only that portion of the total distributions of 1925, and he does not claim an increased deficiency.

The value of the property of the Cudahy Walnut Land Co. had increased, before March 1, 1913, $925,000 over and above its cost to the corporation. Although this increase had not been realized by the corporation, and although the corporation had no earned surplus on that date, nevertheless the increase in value had accrued within the meaning of section 201 (b). The stipulation shows the subsequent distributions and earnings of the corporation. The real question in the case is to determine the effect, if any, upon the 1924 distributions of that part of the stipulation which shows that the expenses of the company for the period from March 1, 1913, through July 31, 1922, exceeded by $798,053.08 its income, consisting entirely of profits from the sale of real estate during that period computed on the basis of the fair market value of the real estate on March 1, 1913. The petitioner contends that the operating loss of $798,053.08, thus computed, was an operating loss in every sense and impaired the paid-in surplus and capital of the corporation, therefore, the capital and paid-in surplus must be fully restored from earnings

---

[1] Section 201 (b) may shed some light upon that question. It provides in part: "Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed * * *." The meaning of that provision was carefully considered and adequately discussed by the Court of Claims in *Hoffman* v. *United States*, 53 Fed. (2d) 282. The court there came to the conclusion that the word "accrued", as used in the above quoted provision, meant *which had arisen* or *come into existence* rather than *which had been actually realized*. We agree with that interpretation. Furthermore, in order to give that provision proper effect, it is apparently necessary to use the fair market value on March 1, 1913, instead of cost in the computation of "earnings or profits accumulated after February 28, 1913."

before there are any "earnings or profits accumulated after February 28, 1913" from which a taxable dividend could be distributed.

The statute does not provide that impaired capital or paid-in surplus must be restored before earnings are available for the distribution of a taxable dividend. That rule of law was laid down by the Board and the courts, which had in mind the fundamental principle that a corporation, the capital of which had been impaired by losses, can never have any accumulated earnings until its capital is restored. Corporations, of course, were well known long before March 1, 1913, the effective date of the income tax. Likewise, the concepts of capital and impairment of capital were fixed in the law and generally understood. The provisions of the revenue acts have not changed the law in respect of capital or impairment of capital. Those acts, however, allowed for certain purposes the use of the fair market value on March 1, 1913, of property acquired prior thereto instead of the lower cost of such property. For example, in the computation of gain or loss giving rise to income or deductions, corporations could use March 1, 1913, value, regardless of what would have been the situation had they used cost as a basis. But in the determination of whether or not the capital of a particular corporation has been impaired, there is, so far as we know, no good reason or authority for using the fair market value on March 1, 1913. Losses for which corporations are allowed income tax deductions do not necessarily impair capital. The capital or paid-in surplus of a corporation is only impaired when some part of that capital or that paid-in surplus has been lost. That requires a computation based upon cost.[2] Obviously, the fair market value of property on March 1, 1913, has nothing whatever to do with that particular question.[3] *Annie P. Kountze*, 17 B. T. A. 928. Cf. *Ida I. McKinney*, 32 B. T. A. 450; affd., 87 Fed. (2d) 811.

Although the parties have presented all of the facts which they desired to present, the record does not show that capital or paid-in surplus of the Cudahy Walnut Land Co. was ever impaired. Con-

---

[2] Example: A corporation sold an asset in 1924 for $150. The asset had cost $100 in 1912 but was worth $200 on March 1, 1913. The corporation would be entitled to deduct a loss of $50 from its income in computing its income tax liability, but it had no loss which impaired its capital. Likewise had it sold the asset for $300 and had its operating expenses been $200, no impairment of capital would have resulted.

[3] The case of *T. Irving Hadden, Executor*, 17 B. T. A. 956, a companion case of the *Kountze* case, *supra*, was reversed by the Court of Appeals for the Second Circuit. *Hadden v. Commissioner*, 49 Fed. (2d) 709. The court there apparently proceeded on the theory that earned surplus on March 1, 1913, and unrealized appreciation at March 1, 1913, must be treated like the capital of a corporation in that, if they are reduced by subsequent losses, they must be restored from earnings before there are earnings available for the distribution of a taxable dividend. Although we have great respect for that court, we are not convinced by its opinion in the *Hadden* case. Cf. *Helvering v. Canfield*, 291 U. S. 163, which settled the question in so far as earned surplus on March 1, 1913, is concerned. There would seem to be less reason for requiring the restoration of unrealized appreciation on March 1, 1913. The *Canfield* case also shows the error of the Board's decision on this subject in *Talbot O. Walker*, 27 B. T. A. 829, reversed upon stipulation, 72 Fed. (2d) 1011, 1012, and affirmed on another point, 77 Fed. (2d) 810.

sequently, there is no occasion here to decide what the situation would be in case capital or paid-in surplus had been impaired. The stipulation shows that the corporation had earnings during the period beginning immediately after the last distribution of 1924 and ending at the time of the last distribution of 1925. That means that the corporation had realized that amount in excess of its expenses for that period and the fair market value on March 1, 1913, of all property sold during that period. Thus, to the extent of those earnings, the distributions of 1925 represented the distribution of earnings or profits accumulated after February 28, 1913, rather than a distribution of capital or a distribution of an increase in value of property accrued before March 1, 1913. The increase in value of the property accrued before March 1, 1913, is realized through the tax-free receipt of the March 1, 1913, value to the extent that it exceeds cost. The earnings of $117,725.99 were over and above and entirely separate from that increase in the value of the property which accrued before March 1, 1913. Thus it does not appear that the Commissioner erred in taxing 42.26 percent of the total distributions of 1925.

The petitioner says that the unrealized appreciation in value of its properties which had accrued before March 1, 1913, was not a true surplus and could not have absorbed its losses because that appreciation "was not realized until the property was sold after the losses were sustained" and "it is clear   *   *   *   that the expenses of the corporation were paid from its paid-in surplus and from its capital for those were the only tangible funds with which the expenses could be paid." This serves to demonstrate the weakness of the petitioner's whole argument, for losses of $798,053.08 could not have been paid out of surplus of $321,235.65 and capital of $250,000. The so-called losses of $798,053.08 were income tax losses based upon March 1, 1913, value and not losses which resulted in an impairment of capital or paid-in surplus. If the corporation had had losses of that amount, based upon the cost of the property to it and resulting in the loss of the actual capital and surplus paid in, it would have been insolvent to the extent of $226,817.43, and all of its distributions would have been illegal under the California law, which permitted the distribution of dividends out of surplus profits only. The fact of the matter is that, for the purpose of determining whether or not there was an impairment of capital, losses based upon March 1, 1913, value are no more material than the unrealized appreciation in value of the property on March 1, 1913.

Reviewed by the Board.

*Decision will be entered for the respondent.*

ARNOLD concurs only in the result.