**VAN NORMAN CO. v. WELCH, Former Collector of Internal Revenue.**

No. 3949.

Circuit Court of Appeals, First Circuit.

March 8, 1944.

Bennett Sanderson, of Boston, Mass. (Hale, Sanderson, Byrnes & Morton and Francis G. Moulton, all of Boston, Mass., of counsel), for appellant.

William B. Waldo, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., A. F. Prescott and Muriel Paul, Sp. Assts. to the Atty. Gen., Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., on the brief), for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is an action to recover an alleged overpayment of federal income tax for the year 1936. The case was tried before a judge on stipulated facts and documentary evidence. The taxpayer, a Massachusetts corporation, formerly Van Norman Machine Tool Company, here appeals from the judgment for the Collector.

The first of the two questions presented is whether the taxpayer is entitled to a larger dividends paid credit in the year 1936 than allowed on account of the retirement in that year, as a part of the redemp-

tion of all of its preferred stock, of the stock issued in 1927 and 1934 in satisfaction of arrears in preferred stock dividends.

The pertinent sections of the statute are set out in the margin.[1] In brief, § 14(b) of the Revenue Act of 1936, 26 U.S.C.A. Int. Rev.Acts, page 823, imposes a tax on the "undistributed net income" of corporations which is defined by § 14(a) (2) as the "adjusted net income minus the sum of the dividends paid credit." § 27(a), 26 U.S. C.A. Int.Rev.Acts, page 837, provides that "the dividends paid credit shall be the amount of dividends paid during the taxable year." § 27(f), upon which the taxpayer must rely, recites: "In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall * * * be treated as a taxable dividend paid."

The following facts were found by the trial court: "In 1927 the taxpayer, a Massachusetts business corporation, had outstanding shares of common stock and shares of $100 par preferred stock. On each share of preferred stock there were unpaid accrued dividends of $60. The corporation had substantial deficits in both its capital surplus and its earned surplus. In these circumstances the corporation, no stockholder dissenting, (1) issued four shares of new $25 preferred stock in exchange for each share of $100 preferred stock, and (2) issued one additional share of new $25 preferred stock in full satisfaction of the arrears of $60 on each share of $100 preferred stock. The second of those issues is described in the vote of the stockholders on March 17, 1927 as being an issue of new stock 'to the holders of [old] preferred shares who * * * waive the balance of dividends accrued or accruing to March 31, 1927'.

"In 1934 the corporation was again in arrears on the payment of dividends, this time on its new $25 preferred stock. By December 31, 1934, it had a capital deficit of $286,812.22. But it then had an earned surplus of $201,500.54 (that is, it had added to the $98,760.28 earned surplus for the year ending December 31, 1933, $124,714.93 in earnings for 1934, but had paid out prior to December 14, 1934 dividends of $21,974.-67). In these circumstances the corporation, no stockholder dissenting, issued in full satisfaction of the arrears on each share of the preferred stock one-sixth share of $25 preferred stock plus $1.08 in cash. This was in fulfillment of a vote of the stockholders on December 14, 1934, reciting that 'the tender and payment of such stock and cash [was] to cancel in full all unpaid preferred stock dividends up to that due January first, 1935'.

"In October, 1936, when the corporation had a substantial earned surplus, it called for redemption all the $25 preferred stock including the shares issued in the two steps of the 1927 plan and the shares issued in the 1934 plan. For this stock the corporation paid the stipulated redemption price of $27.50, or par plus a $2.50 premium."

The taxpayer was allowed a dividends paid credit on the $2.50 premium and no question is here raised as to that. The issue is whether credit should also be allowed

---

[1] Revenue Act of 1936, c. 690, 49 Stat. 1648:

"Sec. 14. Surtax on Undistributed Profits

"(a) Definitions. As used in this title—

"(1) The term 'adjusted net income' means the net income minus the sum of—

"(A) The normal tax imposed by section 13.

* * * * *

"(2) The term 'undistributed net income' means the adjusted net income minus the sum of the dividends paid credit provided in section 27 and the credit provided in section 26(c), relating to contracts restricting dividends.

"(b) Imposition of Tax. There shall be levied, collected, and paid for each taxable year upon the net income of every corporation a surtax equal to the sum of the following, subject to the application of the specific credit as provided in subsection (c): * * * *"

"Sec. 27. Corporation Credit for Dividends Paid.

"(a) Dividends Paid Credit in General. For the purposes of this title, the dividends paid credit shall be the amount of dividends paid during the taxable year.

* * * * *

"(f) Distributions in Liquidation. In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends paid credit under this section, be treated as a taxable dividend paid."

for the $25 par value paid in redeeming the shares issued in 1927 and in 1934.

Of the shares issued in 1927, those that were at the rate of four $25 par shares in the place of each $100 par share stood in the shoes of the stock they displaced. Thus they represented contributions of capital in their par amount (no showing being made that the original $100 par preferred stock was issued for other than par). The redemption of all the preferred stock in 1936 was a partial liquidation within the meaning of § 115(i),[2] Hill v. Commissioner, 5 Cir., 1942, 126 F.2d 570, but no part of the par value of this four-for-one stock is properly chargeable to the earnings or profits accumulated after February 28, 1913. The payment of its par value on redemption represented a return of capital contribution to the stockholders. As provided in § 115(c), 26 U.S. C.A. Int.Rev.Acts, page 868, "In the case of amounts distributed * * * in partial liquidation * * * the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits." Likewise it is provided in Article 27(f)-1(b) of Treasury Regulations 94: "To determine the amount properly chargeable to the earnings or profits accumulated since February 28, 1913, there must be deducted from the amount of the distribution that part allocable to capital account. The capital account, for purposes of these regulations, includes not only amounts representing the par or stated value of the stock with respect to which the liquidating distribution is being made but also that stock's proper share of the paid-in surplus, and such other corporate items, if any, which for purposes of income taxation, are treated like capital in that they are not taxable dividends when distributed but are applied against and reduce the basis of the stock. The remainder of the distribution in liquidation is, ordinarily, properly chargeable to the earnings or profits accumulated since February 28, 1913." Here the only remainder properly so chargeable to accumulated earnings or profits was the $2.50 premium.

We turn now to the preferred stock issued in 1927 in consideration of the waiver of dividends. Since the corporation had a substantial deficit in its earned surplus, this stock could not have been issued against accumulated earnings or profits, there was no surplus to capitalize, and the 1927 issue could not have been a stock dividend. Bass v. Commissioner, 1 Cir., 1942, 129 F. 2d 300. The votes of the corporation do not describe the transaction as a declaration of a dividend. From these votes it appears that the stock issue involved a reallocation of capital within the corporation. On March 17, 1927, the stockholders voted to amend the Agreement of Association and Articles of Organization of the corporation as follows: "In the event of the liquidation or dissolution of the Corporation or distribution of its assets, the holders of preferred shares shall be entitled to receive out of the assets of the corporation the sum of twenty-seven and $^{50}/_{100}$ ($27.50) per share * * * and after such payment on the preferred shares the remaining assets of the corporation shall be distributed pro rata among the holders of the common shares." The common stock gave up its claim to assets at least to the par value of the new issue of preferred. Although certain book entries described the issue as "preferred dividends in preferred stock", the absence of a surplus prevented the issue from being a stock dividend. Hence the redemption of this preferred stock, at least to its par value, represented a return of capital and cannot be properly chargeable to earnings or profits accumulated.

The redemption of the shares issued in 1934 stands in a somewhat different light. Those shares were also issued in return for the cancellation of arrears of dividends, but in 1934, unlike in 1927, the corporation had an earned surplus. The trial court points out, however, that the 1934 earned surplus was smaller than the 1934 capital deficit. Now in order for any part of a distribution in liquidation to be treated as a taxable dividend paid and thus come within the dividends paid credit, that part must be "properly chargeable to the earnings or profits accumulated * * *." § 27(f). On the facts as found by the trial court there were no earnings or profits accumulated in 1934. "An impairment of fixed or statutory capital occasioned by a

---

[2] "115 (i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." 26 U.S.C.A. Int.Rev. Acts, page 871.

deficit must be restored out of subsequent earnings before there can be accumulated earnings or profits available for dividends. The same rule governs impairments of capital surplus or paid-in surplus." Mertens Law of Federal Income Taxation § 9.30; Willcuts v. Milton Dairy Co., 1927, 275 U.S. 215, 48 S.Ct. 71, 72 L.Ed. 247; Foley Securities Corp. v. Commissioner, 8 Cir., 1939, 106 F.2d 731; Commissioner v. W. S. Farish & Co., 5 Cir., 1939, 104 F.2d 833, certiorari denied Blaffer v. Commissioner, 1939, 308 U.S. 559, 60 S.Ct. 91, 84 L.Ed. 469; Sale v. Commissioner, 1937, 35 B.T.A. 938; Plant v. Commissioner, 30 B.T.A. 133, affirmed, 2 Cir., 1935, 76 F.2d 8; Stifel v. Commissioner, 1934, 29 B.T.A. 1145. But cf. Pembroke Realty & Securities Corporation v. Commissioner, 2 Cir., 1941, 122 F.2d 252. Thus it would appear that here again the stock was issued against contributions of capital previously made by the common stockholders and its redemption, to the amount of par, was a return of capital, properly chargeable to capital, and not entitled to a dividends paid credit.

But the trial court erred in failing to examine more closely the nature of the "capital deficit of $286,812.22". Almost all of that deficit was caused not by losses but by book deductions to back new stock issued as "dividends". For tax purposes only impairments of capital caused by losses must be restored out of subsequent earnings before there can be accumulated earnings or profits available for dividends and "Of course, accumulated earnings or profits available for dividends are not to be diminished in order to restore an impairment or reduction of capital caused by distribution therefrom as distinguished from losses". Mertens, supra, § 9.30; Bolster v. Commissioner, 1931, 23 B.T.A. 347; Henninger v. Commissioner, 1931, 21 B.T.A. 1235. After making up what small part of this capital or paid-in surplus defi-

cit that may be attributable to losses, there is more than enough left of the $201,500.54 earned surplus to cover the $70,300 par preferred stock issued to the holders of preferred stock in 1934. With an earned surplus sufficient to back this stock issue and with the issue being designated on the books as "preferred dividends paid in preferred stock" we believe it should properly be considered a stock dividend. This dividend was not taxable under Revenue Act of 1934, § 115(f), 26 U.S.C.A. Int.Rev. Acts, page 703, which provided that "a stock dividend shall not be subject to tax." Helvering v. Gowran, 1937, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224. Nor was it a distribution of earnings or profits of the corporation. § 115(h).[3] The Senate Committee on Finance said this of § 115(h) in its report on the Revenue Act of 1936 (74th Congress, 2d Session, S. Rept. 2156):

"The rule, under existing law, with respect to the effect on corporate earnings or profits of a distribution which, under the applicable tax law, is a nontaxable stock dividend or a distribution of stock or securities in connection with a reorganization or other exchange, on which gain is not recognized in full, is that such earnings or profits are not diminished by such distribution. In such cases, earnings or profits remain intact and hence available for distribution as dividends by the corporation making such distribution, or by another corporation to which the earnings or profits are transferred upon such reorganization or other exchange. This rule is stated, only in part in section 115(h) of the Revenue Act of 1934, and corresponding provisions of prior acts, but is the rule which is applied by the Treasury and supported by the courts in Commissioner v. Sansome, 2 Cir., 60 F.2d 931; United States v. Kauffmann, 9 Cir., 62 F.2d 1045; Murchison's Estate v. Com'r, 5 Cir., 76 F. 2d 641. While making no change in the

---

[3] "115(h) Effect on earnings and profits of distributions of stock. The distribution (whether before January 1, 1936, or on or after such date) to a distributee by or on behalf of a corporation of its stock or securities or stock or securities in another corporation shall not be considered a distribution of earnings or profits of any corporation—

"(1) if no gain to such distributee from the receipt of such stock or securities was recognized by law, or

"(2) if the distribution was not sub-

ject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or because exempt to him under section 115(f) of the Revenue Act of 1934 or a corresponding provision of a prior Revenue Act.

"As used in this subsection the term 'stock or securities' includes rights to acquire stock or securities." 26 U.S.C.A. Int.Rev.Acts, page 870.

rule as applied under existing law, the recommended amendment is desirable in the interest of greater clarity."

When this stock was redeemed in 1936 there was a distribution properly chargeable to earnings and profits. F. & R. Lazarus & Co. v. Commissioner, 1942, 1 T.C. 292. The trial court should have allowed a dividends paid credit on the retirement of the preferred stock issued in 1934.

The second question presented is whether the corporate taxpayer, which keeps its books and files its returns on a calendar year accrual basis, is entitled to deduct for the year 1936 rather than 1935 certain taxes payable by the corporation to the Commonwealth of Massachusetts.

The taxpayer is a manufacturing corporation. In 1935 Massachusetts had in effect corporation excise taxes which carried a certain rate of tax and which did not include machinery in the base of calculation. Mass.Gen.Laws (Ter.Ed.) c. 63. In 1936 the Massachusetts legislature (Acts of 1936, Chapters 362 and 397) provided that with respect to 1935 the corporate excise tax should include machinery in its basis of calculation and also increased the rate of tax by 10%. These two laws were approved on June 16, 1936, and June 24, 1936, respectively, and became effective on those dates. The taxpayer's federal income tax return for 1935 was due and filed on March 15, 1936. This additional Massa-

chusetts tax assessed for 1935 in the year 1936, based on corporate excess as at December 31, 1935, and on income of the calendar year 1935, amounted to $1,212.91. The question is whether the Commissioner was right in disallowing the deduction of this additional amount for the tax year 1936 and requiring that it be accrued in the 1935 return.[4]

 As recently reiterated in Dixie Pine Products Co. v. Commissioner, 64 S. Ct. 364, the Supreme Court held in United States v. Anderson, 1926, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, that a tax accrues in the year when all events have occurred which fix the amount of the tax and determine the liability of the taxpayer to pay it. George S. Colton Elastic Web. Co. v. United States, 1 Cir., 1940, 116 F.2d 202. In Dixie Pine Products Co. v. Commissioner, supra, it was held that a taxpayer on the accrual basis who was contesting his liability for a state tax could not claim a deduction for the tax in the year imposed (and actually paid), but had to await the taxable year in which its liability for the tax was finally adjudicated. Although the court there cited Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 495, in support of the affirmance of the Tax Court, it also approved the decision on its merits. In the case at bar there was neither liability for the additional tax nor could its amount be known in 1935. The event which fixed the amount of the additional

4 Revenue Act of 1936, c. 690, 49 Stat. 1648:

"Sec. 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

* * * * *

"(c) Taxes Generally. Taxes paid or accrued within the taxable year, except—

* * * * *

"Sec. 41. General Rule

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section

48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year. (For use of inventories, see section 22(c).) "

"Sec. 43. Period for Which Deductions and Credits Taken

"The deductions and credits (other than the dividends paid credit provided in section 27) provided for in this title shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. In the case of the death of a taxpayer there shall be allowed as deductions and credits for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly allowable in respect of such period or a prior period." 26 U.S.C.A. Int.Rev.Acts pages 825, 827, 838, 839.

tax and made the taxpayer liable to pay that extra sum was the enactment of the two statutes in June of 1936. Cf. Union Bleachery v. Commissioner, 4 Cir., 1938, 97 F.2d 226; Schuster & Co. v. Williams, 7 Cir., 1922, 283 F. 115. In First National Bank in St. Louis v. Commissioner, 1942, 1 T.C. 370, it was held that increased capital stock tax rates were not deductible in the year prior to tax liability fixed by statute although the taxpayer used the accrual basis. While it is true that the Supreme Court has required accrual in the prior year of a retroactively imposed federal excess profits tax wherein the tax rate change was but one step in a continued and reasonably to be anticipated process of change, the court there said: "The act was passed in ample time to allow the taxpayer to readjust its accounts for that year by including these taxes." Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 51 S.Ct. 144, 145, 75 L.Ed. 397. We interpret this to mean that a taxpayer will be required to keep his accounts open for a reasonable time after the close of the tax year. In that case the act imposing taxes for the year 1918 was passed in February, 1919. Thus the taxpayer was given ample time to readjust its accounts before its tax return was due on March 15, 1919.

On the accrual basis no attempt should be made to include things which cannot be learned until beyond a reasonable time after the tax period. That is to say, the taxpayer should not be required to hold his books open beyond a reasonable time after the close of the period. In the case at bar taxpayer's return was due and filed on March 15th but the new statutes were not enacted until the following June. It would be unreasonable and impractical to require the accounts to be held open and adjusted so long after the close of the taxable year and, more important, after the tax returns were due. Further, unlike the Fawcus Machine case the tax changes here involved were not reasonably to be anticipated as a part of a continuous policy of change in rate. The act including the value of machinery in the corporate excess has been described as a "radical change". Nichols Taxation in Massachusetts, 3d Ed., p. 251. The act increasing the tax rate is entitled "a temporary additional tax".

■ We do not believe this determination by the Commissioner is binding on the court under Revenue Act of 1936, §§ 41 and 43. Cf. Lucas v. Ox Fibre Brush Co.,

1930, 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733.

The taxpayer is entitled to a deduction for the year 1936 on account of the accrual of these Massachusetts taxes.

The judgment of the District Court is affirmed in part and reversed in part, and the case is remanded to that court for further proceedings not inconsistent with this opinion.