## CEDAR RAPIDS ENGINEERING CO. v. UNITED STATES.

### Civ. No. 330.

United States District Court
N. D. Iowa, Cedar Rapids Division.

Oct. 8, 1949.

578

Charles J. Lynch, Jr. (of Donnelly, Lynch, Lynch & Dallas, Cedar Rapids, Iowa), for plaintiff.

Tobias E. Diamond, U. S. Dist. Atty., Sioux City, Iowa, William B. Danforth, Asst. U. S. Dist. Atty., Sioux City, Iowa, Paul S. McMahon, Sp. Asst. to Atty. Gen., for defendant.

GRAVEN, District Judge.

Suit for refund of federal excess profits and declared value excess profits taxes and interest thereon paid for taxpayer's income tax year 1942, pursuant to a deficiency assessment imposed by the Commissioner of Internal Revenue upon the taxpayer and involving the question of the proper time for accruing a capital stock tax liability which arose by virtue of taxpayer's action increasing the declared value of its capital stock after the conclusion of its capital stock tax year.

Plaintiff, hereinafter referred to as taxpayer, is an engineering company located in Cedar Rapids, Iowa. Taxpayer is on the accrual basis of accounting and makes its income tax returns on the calendar year basis, i.e., for the period from January 1st to December 31st of each year. As provided by law, taxpayer's capital stock tax year was the period from July 1st to June 30th of the following year.

Taxpayer accrued as capital stock tax liabilities for the two income tax years immediately preceding the income tax year 1941, as well as for the two income tax years succeeding 1941, the amount computed to be owing on the basis of the capital stock value as declared in its respective capital stock tax returns for the capital stock tax years ending in the year of accrual, adjusted as required by law. The parties stipulated that any additional capital stock tax liability for such years which became due by reason of a change in declared value or a change in rate was paid and deducted in computing taxpayer's net income of the subsequent year. The taxpayer's records introduced in evidence generally support this statement but they do not affirmatively show that any additional capital stock tax liability for the years in question arose because of taxpayer's action increasing the declared value of its capital stock.

Taxpayer did not accrue its capital stock tax liabilities at the beginning of each capital stock tax year on July 1st, but followed the practice of accruing on December 31st of each calendar year its capital stock tax liability for the capital stock tax period beginning each July 1st preceding.

On December 31, 1941, taxpayer accrued upon its books its capital stock tax liability for the capital stock tax year July

1, 1941, to June 30, 1942, as $1537.50. This amount was computed on the declared value of taxpayer's capital stock as stated in its capital stock tax return for the capital stock tax year ending June 30, 1941. The computation was made in accordance with the provisions of the then-effective Sections 1200–1207 of the Internal Revenue Code, 26 U.S.C.A. §§ 1200–1207, repealed, Section 201 of the Revenue Act of 1945, 59 Stat. 574, adjusting the declared value as provided in those sections and applying the rate stated in those sections to such adjusted declared value.

Prior to its amendment in October, 1942, Section 1202 of the Internal Revenue Code, supra, permitted taxpayers to declare a new capital stock value, upon which the capital stock tax was computed, only at three year intervals. For each of the two intervening years the basic declaration was used, taking into account certain adjustments made in accordance with the provisions of Section 1202. Since the 1940-1941 capital stock tax year had been a "declaration year" for the taxpayer in this case, it could not under the law have amended its capital stock declared value at any time during the period from July 1, 1941, to June 30, 1942.

In taxpayer's income tax, excess profits tax and declared value excess profits tax return for the calendar year of 1941, taxpayer took as a deduction in computing its net income for such year the sum which taxpayer had accrued upon its books as a liability for capital stock tax for the capital stock tax year 1941-1942, in the amount of $1537.50. Since in the months preceding June 30, 1942, there were bills pending in Congress which provided that a taxpayer could file a new declaration of value for the 1941-1942 capital stock tax year, the Commissioner extended the time for the filing of capital stock tax returns by all corporations from the due date of July 31, 1942, to November 28, 1942. On October 21, 1942, Section 301 of the Revenue Act of 1942, 56 Stat. 939, amended Section 1202 of the Internal Revenue Code, supra, and provided among other things that a taxpayer could file a new declaration of value for the 1941-1942 capital stock tax year.

On November 28, 1942, the taxpayer timely filed its capital stock tax return for the capital stock tax year July 1, 1941, to June 30, 1942. In this return taxpayer increased the declared value of its capital stock from $1,156,250 to $4,095,000 under the provisions of Section 301 of the Revenue Act of 1942, supra, which permitted such action, as noted above. By reason of this increase in the declared value of its capital stock the taxpayer became liable to pay a capital stock tax for the capital stock tax year ending June 30, 1942, in the amount of $5118.75. This $5118.75 includes both the sum of $1537.50 which taxpayer had accrued on its books as a capital stock tax liability on December 31, 1941, and had taken as a deduction in computing its net income in its income tax return for the 1941 calendar year, as well as an additional sum of $3581.25 which represents the additional capital stock tax liability incurred by taxpayer as a result of its action increasing the declared value of its capital stock for the 1941-1942 capital stock tax year. On or about November 28, 1942, taxpayer paid capital stock taxes for the capital stock tax year July 1, 1941, to June 30, 1942, in the amount of $5118.75.

Subsequently, in taxpayer's income tax return filed for the calendar year ending December 31, 1942, taxpayer took as a deduction in computing its net income for such year that portion of the sum of $5118.75 paid as a capital stock tax for the 1941-1942 capital stock tax year, or $3581.25, which was incurred because of the taxpayer's action increasing the declared value of its capital stock on November 28, 1942, as heretofore noted. This $3581.25 had not been accrued as a liability nor had it been taken as a deduction or figured in any way in taxpayer's income tax return for the calendar year 1941.

Taxpayer's total capital stock tax deduction in computing net income in its 1942 income tax return amounted to $8700. This sum was composed of the $3581.25 additional capital stock tax liability incurred for the 1941-1942 capital stock tax year as noted above, plus the sum of $5118.75 which taxpayer accrued on December

31, 1942, as the capital stock tax liability for its 1942-1943 capital stock tax year.

The Commissioner disallowed $3581.25 of the $8700 deduction taken by the taxpayer in its 1942 income tax return on the theory that this $3581.25 additional capital stock tax liability for the 1941-1942 capital stock tax year really accrued as a liability of the taxpayer in the calendar year 1941 and should have been taken as a deduction in that year, rather than in the calendar year 1942. By reason of this disallowance the Commissioner imposed a deficiency assessment against the taxpayer in the amount of $3660.90. Taxpayer paid this deficiency assessment to the Collector of Internal Revenue for Iowa on August 21, 1945, and on or about June 26, 1946, filed a claim for refund. No action being taken on the taxpayer's claim for refund, this action was brought on May 3, 1949.

There is no dispute as regards the sum of $1537.50 which taxpayer had accrued as a capital stock tax liability and had taken as a deduction in its income tax return for the calendar year 1941. The parties are in dispute however regarding the disposition of the sum of $3581.25 which, as noted above, represents that portion of the taxpayer's capital stock tax liability for its capital stock tax year July 1, 1941, to June 30, 1942, which arose because of the taxpayer's action on November 28, 1942, increasing the declared value of its capital stock.

The defendant Government contends that the taxpayer's liability for the payment of this $3581.25 capital stock tax accrued in the calendar year 1941, and since the taxpayer was on the accrual basis of accounting it should have re-opened its 1941 income tax year, accrued the additional capital stock tax liability in that year and taken it as a deduction from net income in its income tax return for the 1941 calendar year, rather than treating such additional liability as a deduction in its income tax return for the 1942 calendar year. The taxpayer contends that since it could not have amended the declared value of its capital stock at any time during the 1941-1942 capital stock tax year it properly took the sum of $3581.25 as a deduction in comput-

ing its net income in its income tax return for the 1942 calendar year, that being the period of time during which taxpayer's liability for such sum arose.

Taxpayer further contends that it consistently followed the practice for the years prior to 1942 of accruing its capital stock taxes as of the end of each calendar year on the basis of the value as declared in its last capital stock tax return and of accruing any additional capital stock tax liability arising by reason of a subsequent increase in valuation in the year in which such increased valuation was declared. It is in regard to this latter contention of the taxpayer that the defendant Government is in disagreement with the taxpayer.

Until April 29, 1947, taxpayer was the sole stockholder in the Cedar Rapids Engineering Company of Delaware, hereinafter referred to as the Delaware Company. On April 29, 1947, the Delaware Company was dissolved and taxpayer acquired all its assets, including the claim of that company for a refund of excess profits and declared value excess profits taxes and interest thereon in the amount of $347.54. This claim arose out of the action of the Delaware Company in increasing its capital stock declared value from $120,000 to $405,-000 on November 28, 1942, with a resultant increase in its capital stock tax liability for the 1941-1942 capital stock tax year of $337.50, which amount the Delaware Company paid and took as a deduction in its 1942 income tax return. As a result of the Delaware Company's action there was a subsequent deficiency assessment imposed by the Commissioner against the Delaware Company in the amount of $347.54. The Delaware Company paid this deficiency assessment on August 21, 1945, and on or about June 26, 1946, filed this claim for refund, which claim has been made a part of this suit. Since this claim for refund which the taxpayer has acquired from the presently non-existent Delaware Company is in all respects except as to the amounts involved similar to the taxpayer's claim for refund of $3660.90 excess profits and declared value excess profits taxes noted above and since there is no dispute between the parties as to the taxpayer's ac-

quisition of the $347.54 claim for refund possessed by its subsidiary, the taxpayer may be considered for the purposes of this case to be suing for a refund of excess profits and declared value excess profits taxes in the total amount of $4008.44, with interest and costs as provided by law.

There are several portions of the Internal Revenue Code which would seem to bear upon the problem presented by this case. Section 1200 of the Internal Revenue Code, 53 Stat. 169, repealed, Section 201 of the Revenue Act of 1945, 59 Stat. 574, provided in part as follows:

"Sec. 1200. Tax.

"(a) Domestic Corporations.—For each year ending June 30, beginning with the year ending June 30, 1939, there shall be imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock."

Section 1201 of the Internal Revenue Code, 53 Stat. 169; repealed, Section 201 of the Revenue Act of 1945, supra, provided for the exemption of certain organizations from the capital stock tax imposed by Section 1200. Section 1202 of the Internal Revenue Code, 53 Stat. 169, repealed, Section 201 of the Revenue Act of 1945, supra, provided in part as follows:

"Sec. 1202. Adjusted Declared Value.

"(a) Declaration Year.—

"(1) The adjusted declared value shall be determined with respect to three-year periods beginning with the year ending June 30, 1938, and each third year thereafter. The first year of each such three-year period, or, in the case of a corporation not subject to the tax imposed for such year, the first year of such three-year period for which the corporation is subject to such tax, shall constitute a 'declaration year.'

"(2) For the declaration year of the first three-year period the adjusted declared value shall be the value as declared by the corporation in its return under section 601 of the Revenue Act of 1938, 52 Stat. 565, for the year ended June 30, 1938, or in the case of a corporation not subject to the tax imposed for such year, the value as declared in its return filed under this chapter for the first year with respect to which it is subject to the tax. For each subsequent three-year period, the adjusted declared value for a declaration year shall be the value as declared by the corporation in its return for such declaration year. The value declared by a corporation in its return for a declaration year (which declaration of value cannot be amended) shall be as of the close of its last income-tax taxable year ending with or prior to the close of such declaration year (or as of the date of organization in the case of a corporation having no income-tax taxable year ending with or prior to the close of such declaration year)."

The statutory provisions set out above make it clear that the capital stock tax year ending June 30, 1941, being the first year of a new three-year period, was in the case of most corporate taxpayers a "declaration year" and a corporation could file a new declaration of value for that year, which declaration was not subject to amendment during the succeeding two years. The taxpayer in the present case was faced with this situation. Provision was made for "adjusting" such declared value each year by allowing for capital and surplus changes within the corporate financial structure.

Section 301 of the Revenue Act of 1942, 56 Stat. 939, amended Section 1202, supra, and provided in part as follows:

"Sec. 301. Capital Stock Tax.

"(a) Technical Amendment.—Section 1200 (a) and (b) (relating to rate of capital stock tax) are amended by striking out the word 'adjusted' wherever occurring therein.

"(b) Annual Declaration of Value.—Section 1202 (relating to declaration of value) is amended as follows:

" 'Sec. 1202. Declared Value.

" '(a) Declaration of Value.—The declared value shall be the value as declared by the corporation in its return for the year (which declaration of value cannot be amended). The value declared by the corporation in its return shall be as of the close of its last income-tax taxable year

ending with or prior to the close of the capital stock tax taxable year (or as of the date of organization in the case of a corporation having no income-tax taxable year ending with or prior to the close of such declaration year).'"

Thus, Section 301, which became effective October 21, 1942, made each year commencing with the year ending June 30, 1942, a declaration year, and also dropped out all the provisions of Section 1202 of the Internal Revenue Code, supra, relating to adjustments.

That capital stock taxes could properly be deducted by a taxpayer for purposes of computing net income in its income tax return is clear under the provisions of Section 23(c) of the Internal Revenue Code, 26 U.S.C.A. § 23(c), which provides for the deduction from gross income of taxes generally, with certain exceptions noted therein.

The defendant Government in the present case concedes that the taxpayer was on the accrual basis of accounting, i. e., items were "accrued" upon the taxpayer's books when the right to receive income or the obligation to expend money was certain and not dependent upon the happening of some contingency or event occurring in a subsequent year.

Section 41 of the Internal Revenue Code, 26 U.S.C.A. § 41, establishing a general rule for accounting periods and methods of accounting provides:·

"§ 41. General rule

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

Section 42 of the Internal Revenue Code, 26 U.S.C.A. § 42, provides in part as follows:

"§ 42. Period in which items of gross income included

"(a) General rule. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of· a different period."

Section 43 of the Internal Revenue Code, 26 U.S.C.A. § 43, provides in part:

"§ 43. Period for which deductions and credits taken

"The deductions and credits * * * provided for in this chapter shall be ·taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis ·of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period."

In Huntington Securities Corp. v. Busey, 6 Cir., 1940, 112 F.2d 368, at page 370, the Court of Appeals for the Sixth ·Circuit stated that, "It is well-settled and conceded that a taxpayer may make his return upon either a cash ·or accrual basis in accordance with the method of accounting regularly employed in keeping his books, if his method clearly reflects income (citation) * * *." For numerous decisions to the same effect see annotations to Section 41 of the Internal Revenue Code, supra. The Court in the Huntington case went on to add that the word "method" as used in Section 41, set out above, means the way of keeping the taxpayer's books according to a defined and regular plan; and that "clearly," as used in the statute, means plainly, honestly, straightforwardly and frankly, but does not mean "accurately," which in its ordinary use, means precisely, exactly, correctly, without error or defect.

The Court of Appeals for the Ninth Circuit has stated that the statutory requirement that taxpayer's method of accounting shall clearly reflect income means only that the taxpayer's books shall be kept fairly and honestly without intent to evade tax. Osterloh v. Lucas, 9 Cir., 1930, 37 F.2d 277.

In United States v. Anderson, 1926, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347, the United States Supreme Court stated that a tax accrues in the year when all the events have occurred which fix the amount of the tax and determine the liability of the taxpayer to pay such tax. See also, Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 285 et seq., 64 S.Ct. 596, 88 L.Ed. 725; Dixie Pine Products Co. v. Commissioner, 1944, 320 U.S. 516, 518, 519, 64 S.Ct. 364, 88 L.Ed. 270; Van Norman Co. v. Welch, 1 Cir., 1944, 141 F.2d 99, 103, 104; Bowman Hotel Corp. v. Commissioner, 1931, 24 B. T. A. 1193, 1209.

It has been the view of the Bureau of Internal Revenue for some time that the liability for capital stock tax accrued on the first day of the capital stock tax taxable period. See G. C. M. 23251, C. B. 1942-2, 103. The Tax Court has consistently followed Bureau of Internal Revenue rulings and held that the liability for capital stock taxes accrues at the beginning of the capital stock tax period rather than at the end. Atwater & Co. v. Commissioner, 1948, 10 T. C. 218 (cases cited at page 249). In the Atwater case the taxpayer was on the accrual basis, but it did not accrue its capital stock tax liability until the calendar year in which the capital stock tax period ended and payment was made. The Tax Court held that this was wrong since taxpayer was in effect placing these items upon a cash basis by such treatment.

In Atlantic Coast Line R. Co. v. Commissioner, 1944, 4 T. C. 140, 150, 151, the Tax Court referred to a "technical liability" for the capital stock tax for the entire year as arising on July 1st of each year. However, the taxpayer had consistently followed the practice of accruing its capital stock tax liability on a monthly basis. The Tax Court upheld this consistent practice of the taxpayer as being "eminently reasonable" and not working a distortion of its true net income. In view of the Tax Court's holding in this case the Bureau of Internal Revenue issued G. C. M. 24461, C. B. 1945, 111, which amended G. C. M. 23251, supra, and allowed a taxpayer to follow its own method of taking the deduction for federal capital stock tax in its income tax returns, provided such method clearly reflected the taxpayer's income and was consistently followed for federal income tax purposes, even though such method did not provide for the accrual of capital stock taxes as of the beginning of each capital stock tax period. This exception provided by G.C.M. 24461, supra, appears to be rather narrowly limited to those cases where a certain type of accrual practice has been consistently followed and no distortion of income results. Atwater & Co. v. Commissioner, supra.

It appears in the present case that taxpayer accrued its capital stock tax liability for each capital stock tax year on December 31st of each calendar year rather than the beginning of each capital stock tax year on July 1st. The parties do not dispute the correctness of this procedure. However, as noted above, there is a dispute as to the correct method of handling the additional capital stock tax liability which arose in a subsequent calendar year by virtue of taxpayer's action increasing the declared value of its capital stock. Taxpayer contends that it consistently followed the practice for the years prior to 1942 of accruing its capital stock taxes as of the end of each calendar year on the basis of the value as declared in its last capital stock tax return and of accruing and deducting any additional capital stock tax liability arising by reason of a subsequent increase in such valuation in the income tax year in which such increased valuation was declared. The defendant Government admits that the taxpayer reported on the accrual basis of accounting but denies that the taxpayer followed the practice of accruing and deducting on its income tax returns additional capital stock tax liability in the calendar year in which such liability arose. As here-

584

tofore noted, the taxpayer's records introduced in evidence generally support the taxpayer's contention in respect to what its practice has been in the disposition of additional capital stock tax liability. However, these records do not affirmatively show whether any such additional liability arose because of a change in the declared value of the taxpayer's capital stock or was due to a change in the capital stock tax rate or represented an adjustment in the declared value as permitted by law.

■ In the absence of permission to do otherwise, a taxpayer must report its income in accordance with the method of accounting it has been using in previous years and which has been approved by the Commissioner. Planet Line v. Commissioner, 2 Cir., 1937, 89 F.2d 16. However, the situation presented in the present case does not appear to be one involving a taxpayer attempting to change its method of accounting, but rather involves a determination of the correct method of handling an individual item on the taxpayer's books.

■ The Commissioner has discretion under Section 41 of the Internal Revenue Code, supra, to alter a taxpayer's approved method of accounting so it clearly reflects income. See also, Keasbey & Mattison Co. v. United States, 3 Cir., 1944, 141 F.2d 163. However, this discretion is not of an unlimited nature and it has been held that the Commissioner may not add to a taxpayer's gross income for a given year an item which rightfully belongs to another year. Clifton Mfg. Co. v. Commissioner, 4 Cir., 1943, 137 F.2d 290, 150 A.L.R. 749. See also, Huntington Securities Corp. v. Busey, supra.

Thus it seems that a determination must be made in the present case of the period to which the additional capital stock tax liability of the taxpayer belongs. Petitioner in Budd International Corp. v. Commissioner, 1941, 45 B.T.A. 737, reported on the accrual basis and in 1935 had accrued and deducted in its income tax return for that year a capital stock tax for the capital stock tax year 1935–1936. Then in June, 1936, Section 401 of the Revenue Act of 1936, 26 U.S.C.A. Internal Revenue Acts,

p. 943, changed the existing capital stock tax rate. This led petitioner to increase the declared value of its capital stock with a resultant increase in its capital stock tax liability for the capital stock tax year 1935–1936. Petitioner deducted this additional capital stock tax liability in its 1936 income tax return. The Commissioner disallowed such deduction and his action was upheld by the Board of Tax Appeals on the theory that taxpayer could not split up the single annual capital stock tax and deduct a part of it in 1935 and the rest in 1936. The Board stated, 45 B.T.A. at page 753, that no point had been made of the petitioner's change of valuation. The Budd case was later reversed, 3 Cir., 1944, 143 F.2d 784, but this point concerning the period in which the additional capital stock tax liability could be taken as a deduction from net income was not considered by the Court of Appeals for the Third Circuit.

In United States v. Detroit Moulding Corp., D.C.E.D.Mich.1944, 56 F.Supp. 754, defendant taxpayer kept its records on the accrual calendar year basis and on July 1, 1937, had accrued its capital stock tax liability for the entire 1937–1938 capital stock tax year and had deducted such tax on its 1937 income tax return. As in the present case, defendant taxpayer in the Detroit Moulding Corp. case could not amend the declared value of its capital stock at any time during the 1937 calendar year. Section 601(f) of the Revenue Act of 1938, 26 U.S.C.A. Internal Revenue Acts, p. 1140, which became effective May 28th, 1938, permitted a new declaration of capital stock value for the capital stock tax year ending June 30, 1938. In July, 1938, the defendant taxpayer filed its capital stock tax return and paid its capital stock tax for the 1937–1938 capital stock tax year, and at the same time took advantage of the opportunity afforded by the 1938 Revenue Act to lower the declared value of its capital stock. Thus it paid a capital stock tax for the 1937–1938 capital stock tax year which was substantially less than the amount it had accrued in 1937 and had taken as a deduction in its 1937 income tax return. The defendant taxpayer accrued the excess of the amount of its 1937 accrual over the capital

stock tax it actually paid for the 1937–1938 capital stock tax year as an item of income in 1938. The Government, relying on the Board of Tax Appeals decision in Budd International Corp. v. Commissioner, supra, contended that the defendant taxpayer should amend its July 1, 1937, capital stock tax accrual to reflect only the amount of capital stock tax actually paid under the 1938 Act rather than the amount of its liability under the 1936 Act which had been the basis of the original accrual on July 1, 1937. This, of course, would require reopening and adjusting the defendant taxpayer's 1937 income tax return. The defendant taxpayer contended that it had properly handled the decrease in its capital stock tax liability for the 1937–1938 capital stock tax year by reporting it as income in the year (1938) in which it arose. The District Court did not follow the Board of Tax Appeals decision on this point in the Budd case, but upheld the defendant taxpayer's position and stated, 56 F.Supp. at page 757, that, "Where, as here, in accrual accounting by calendar year periods for income tax purposes, all the events occur within a calendar year which fix the amount and the fact of a taxpayer's liability for an excise tax accrued though not paid, which liability is neither contested by the taxpayer nor contingent and not changed within a reasonable time after the close of the calendar year, proper accounting practice requires that such liability be accounted and deducted as accrued during such year, and, if such liability is lessened by unexpected events occurring in a subsequent year, after the income tax return has been filed, proper accounting practice requires that this be reflected by an entry in the subsequent year, crediting as income the amount by which the obligation has been so lessened, rather than by re-opening and adjusting the taxpayer's books for the previous year (citation)."

The petitioner in the case of Budd International Corp. v. Commissioner, supra, was able to amend the declared value of its capital stock at any time during the 1935–1936 capital stock tax year but did not choose to make such amended declaration of value until after a new statutory provision was enacted in 1936 changing the capital stock tax rate. Thus the contention might be advanced that petitioner in the Budd case was using this means of changing the declared value of its capital stock to alter its income for the years in question and that such a method would not "clearly" reflect income. On the other hand, defendant taxpayer in the case of United States v. Detroit Moulding Corp., supra, under the applicable statutory provisions in force at the time that case arose, had no opportunity to amend its capital stock declared value at any time during the 1937–1938 capital stock tax year in question in that case. The taxpayer in the present case likewise was not permitted by law to amend the declared value of its capital stock at any time during the 1941–1942 capital stock tax year in question in this case.

Two rather recent decisions by the Tax Court would seem to indicate that it is veering away from its position in the Budd case. In Baltimore Transfer Co. v. Commissioner, 1947, 8. T.C. 1, the Tax Court cited United States v. Detroit Moulding Corp., supra, with approval in holding that petitioner properly accrued its liability for state unemployment compensation taxes upon the basis of a rate notification by the administering state board notwithstanding a determination by the board in the following year that petitioner was entitled to a lower rate. Petitioner had not contested the rate as originally fixed and could not have learned of the change prior to the time it actually was notified of such change in the following year. The case of Fabrick Tractor Co. v. Commissioner, 1948, 7 T.C. M. 7, involves a situation substantially similar to the present case. Petitioner in that case, an accrual basis taxpayer, had for many years followed the practice of accruing and deducting its capital stock tax in the year of payment, and the examining revenue agents would then adjust the deductions to an accrual basis. In the income tax year 1941, petitioner accrued and deducted its 1940–1941 capital stock tax and subsequently had it adjusted by the examining revenue agent as a deduction for the income tax year 1940. The revenue agent also allowed petitioner to accrue

$4510 as a capital stock tax liability for the 1941–1942 capital stock tax year and to take such sum as a deduction in its 1941 income tax return. In filing its capital stock tax return in November, 1942, petitioner declared a new capital stock tax value which was lower than the amount used in computing the accrual for 1941. The new value resulted in a capital stock tax for the 1941–1942 capital stock tax year of $3500, which petitioner paid on November 28, 1942. In contrast to his position in the Budd case, the Commissioner took the position that petitioner should not re-open its books for the 1941 income tax year but that $1010 ($4510 accrued less $3500 paid) was released as additional income in 1942. In upholding the Commissioner's position the Tax Court again cited United States v. Detroit Moulding Corp., supra, with approval and stated (p.11), "The petitioner's capital stock tax (year ended June 30, 1942) was accruable on July 1, 1941, in the sum of $4,510. No event occurred during 1941 to change that liability. It was changed in 1942 by the declaration of a new value in the capital stock tax return. The new value was not authorized and could not have been used as the basis for determining the amount of the accrual in 1941. * * * The petitioner was entitled to accrue the sum of $4,510 in 1941 under the principles set forth in Baltimore Transfer Co. v. Commissioner, 8 T.C. 1. We hold that the payment of a lesser amount in 1942 released the balance of the accrual as income in the year of payment (citation)."

Thus it would appear that the present position of the Tax Court is that the propriety of accruals must be judged by the facts which a taxpayer knows or could reasonably be expected to know at the closing of its books for the income tax year, and that if at the close of the income tax year the taxpayer has no election under the law to increase its capital stock tax liability, then such liability is to be accrued on the basis of the existing law and facts regardless of a subsequent change in that liability by reason of an election made pursuant to a law subsequently enacted. This position is supported by the District

Court decision in United States v. Detroit Moulding Corp., supra.

Several other decisions would seem to throw some light upon this troublesome problem. In First Nat. Bank in St. Louis v. Commissioner, 1942, 1 T.C. 370, the Tax Court held that increased capital stock tax rates were not deductible in an income tax return for the calendar year prior to the date of the statute increasing such capital stock tax rates, even though the taxpayer was on the accrual basis. For other cases to the effect that when a tax becomes effective or a rate is increased after the close of a taxable year it cannot be accrued in such prior year even though it would have been proper to have accrued it in the prior year had it been in effect at the close thereof, see Van Norman Co. v. Welch, 1 Cir., 1944, 141 F.2d 99; Union Bleachery v. Commissioner, 4 Cir., 1938, 97 F.2d 226; Schuster & Co. v. Williams, 7 Cir., 1922, 283 F. 115. Apparently the only exception to this general principle is the situation where the tax imposed in the subsequent year is the same sort of tax as imposed under prior law, the policy of the taxing authority to continue the prior tax was commonly known, and the law was passed in time for the adjustment of a taxpayer's books. Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397.

In Van Norman Co. v. Welch, 1 Cir., 1944, 141 F.2d 99, the Court of Appeals for the First Circuit held that where laws increasing state excise taxes on a corporation filing federal income tax returns on a calendar year accrual basis were not approved until June, 1936, the amount of the increase was deductible, in computing federal income tax, for the year 1936, rather than for the year 1935. The Court stated, 141 F.2d at page 104, that, "On the accrual basis no attempt should be made to include things which cannot be learned until beyond a reasonable time after the tax period. That is to say, the taxpayer should not be required to hold his books open beyond a reasonable time after the close of the period. In the case at bar taxpayer's return was due and filed on March 15th but the new statutes were not enacted until the

following June. It would be unreasonable and impractical to require the accounts to be held open and adjusted so long after the close of the taxable year and, more important, after the tax returns were due."

It appears in the present case that taxpayer's liability for the additional capital stock tax arising because of its action in November, 1942, increasing the declared value of its capital stock was not fixed and certain in the calendar year 1941, and did not occur within such a reasonable time after the end of the calendar year 1941 as to require taxpayer to reopen its books for that year. This conclusion applies with equal force to the taxpayer's subsidiary. It is the holding of the Court that taxpayer and its subsidiary properly treated their additional capital stock tax liability as a deduction in computing net income in their income tax, excess profits tax and declared value excess profits tax returns for the calendar year 1942, and that the taxpayer may recover the sum of $4008.44, which is the total amount claimed in this action and which represents the deficiency assessments imposed by the Commissioner against the taxpayer and its subsidiary, with interest and costs as provided by law.

Judgment will be entered in accordance with this opinion.